Leo R. KAY, Jr., Plaintiff-Appellant,

v.

**UNITED TECHNOLOGIES CORPORATION, Defendant-Appellee.**

No. 84–1120.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 6, 1984.

Decided March 22, 1985.

Joseph A. Golden, Southfield, Mich., for plaintiff-appellant.

Richard J. Seryak (argued), Diane M. Soubly, Detroit, Mich., for defendant-appellee.

Before EDWARDS * and KENNEDY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

---

* Honorable George C. Edwards took senior status January 15, 1985.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.

Plaintiff-appellant, Leo R. Kay, Jr. was discharged by appellee United Technologies Corporation after an unsatisfactory evaluation report by his supervisor. United Technologies had taken over Essex Group, Inc. two years earlier. Kay had worked for Essex for two years prior to the takeover without any unsatisfactory evaluations as far as this record is concerned.

Plaintiff Kay's action is brought under the diversity jurisdiction of the federal courts. It is founded on Plaintiff's contention based on *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980), that he had an implied contract with his employer that he would not be discharged without "just cause." United Technologies contended before the District Court and contends before us that Kay's employment was "at will" of his employer.

This case was heard before District Judge Julian Cook in the U.S. District Court for the Eastern District of Michigan on United Technologies' motion for summary judgment. In a thoughtful oral opinion from the bench, Judge Cook discussed each of Plaintiff's three claims of factual basis of entitlement to an implied employment contract of no discharge without "just cause" under *Toussaint* and found each to be without legal merit. The first of these is a September 28, 1979 letter from Peter L. Scott, President of Essex Group, to all employees. The letter describes improvements in employee benefits and concludes with the following paragraph:

> You have helped make possible these improved benefits for you and your family by effective performance on the job. Maximum effort by each of us in the future is the surest way we can contribute to the company's continued growth and our own job security. We'll succeed together.

Plaintiff's second claim [1] relies upon language in the Essex Group "Exempt Employee Performance Appraisal" form. The form's general instructions state, in pertinent part:

> This program of performance appraisal applies to all salaried employees of the company. All members of management who supervise salaried employees are required to appraise the performance of each employee at least annually. More frequent appraisals are appropriate for new employees and those employees with performance problems.

The form further instructs that each salaried employee's performance is to be rated according to the following guidelines:

**OUTSTANDING**

Performance clearly exceeds, in both quantity and quality, expectations and normal standards for the position. Significant examples of outstanding performance on specific assignments readily available. Does a superior job in planning and organizing activities and in dealing with unusual or unanticipated problems. Consistently produces results of a highly professional and finished nature.

**COMMENDABLE**

Performance pursuant to expectations is substantially above average. Level of accomplishment reflects a high degree of proficiency and measurably surpasses that required for acceptable completion of established goals and objectives.

**GOOD**

Performance pursuant to expectations fully satisfactory. Achieves agreed upon goals and objectives and requires no more than normal supervision and assistance. Normally produces results in an organized and effective manner. No particularly important variances from standard one way or the other.

**ADEQUATE**

Performance pursuant to expectations normally adequate, but often below fully acceptable level. Requires more supervision and assistance than is acceptable on

---

**1.** Plaintiff's first two claims rest upon his prior employer's policies. The District Court did not decide nor do we whether such claims would be binding on a successor employer.

a continuing basis. Necessity for improvement in one or more specific areas indicated. With improvement in specific areas, attainment of position goals and objectives could be achieved.

**UNACCEPTABLE**

Performance is substantially below required level with respect to achieving established goals and objectives. Substantial improvement is required or corrective action indicated.

Finally, Plaintiff cites the following excerpt from the deposition of Stanley Craft, Plaintiff's supervisor with United Technologies:

Q: Was it your intent in utilizing this evaluation form to give the employee an opportunity to improve those deficiencies so that his or her employment with the company could continue?

Craft: It generally was not done with the idea of employment continuing or not continuing. It was done on the basis of improving job performance.

Q: To what end?

Craft: For the benefit of the company and the individual.

Q: How would the individual be benefited?

Craft: The individual by improving his performance can achieve higher opportunities, higher positions within the company.

Joint Appendix p. 221.

In relation to none of these three claims do we find a basis for an employment contract which promised Kay that he would not be discharged without "just cause." Our review of Plaintiff's claims leads us to agree with the District Judge that Plaintiff has not pled facts which establish a right to a jury trial on "just cause" under the *Toussaint* standards.

This last conclusion may have been in some doubt prior to the very recent decision of the Michigan Supreme Court written by Justice Levin, the author of the *Toussaint* case. In *Valentine v. General American Credit, Inc.,* 420 Mich. 256, 362 N.W.2d 628 (1984), Justice Levin, joined by all his colleagues, revisited *Toussaint* and interpreted it in language which in this diversity case is binding on us. He said:

In *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980), this court held that an employment contract providing that an employee would not be terminated except for cause was enforceable although no definite term of employment was stated.

*Toussaint* makes employment contracts which provide that ·an employee will not be dismissed except for cause enforceable in the same manner as other contracts. It did not recognize employment as a fundamental right or create a new "special" right. The only right held in *Toussaint* to be enforceable was the right that arose out of the promise not to terminate except for cause.

Employers and employees remain free to provide, or not to provide, for job security. Absent a contractual provision for job security, either the employer or the employee may ordinarily terminate an employment contract at any time for any, or no, reason.[2] The obligation which gave rise to this action is based on the agreement of the parties;[3] it is not an obligation imposed on the employer by law. This is an action for breach of contract and not a tort action.

The judgment of the District Court is affirmed.

---

**2.** See *Suchodolski v. Michigan Consolidated Gas Co.,* 412 Mich. 692, 694–695; 316 N.W.2d 710 (1982), and *Clifford v. Cactus Drilling Corp.,* 419 Mich. 356, 360; 353 N.W.2d 469 (1984).

**3.** *McIntosh v. Groomes,* 227 Mich. 215, 218, 198 N.W. 954 (1924); *Lichnovsky v. Ziebart Int'l Corp.,* 414 Mich. 228, 241, fn. 23, 324 N.W.2d 732 (1982); Prosser & Keeton, Torts (5th ed.), § 92, pp. 655–656; 167 Am.Jur.2d, Contracts, § 1 p. 333.