**Spurgeon ROUSE, Jr., Plaintiff,**

v.

**PEPSI–COLA METROPOLITAN
BOTTLING COMPANY, INC.,
Defendant.**

**No. 83–CV–3243–DT.**

United States District Court,
E.D. Michigan, S.D.

Sept. 17, 1985.

George Jones, Detroit, Mich., for plaintiff.

Gregory V. Murray, Detroit, Mich., William M. O'Reilley, Chicago, Ill., for defendant.

OPINION AND ORDER

LA PLATA, District Judge.

I. *Introduction*

On July 12, 1983, Plaintiff, Spurgeon Rouse, Jr., filed a five-count complaint in the Wayne County Circuit Court against Defendant, Pepsi-Cola Metropolitan Bottling Company, Inc. Therein, he essentially alleged that he was terminated from his employment, without just cause, in contravention of the Elliot-Larsen Civil Rights

Act[1] and an implied or express contract of employment. In addition to his breach of contract and racial discrimination counts, Plaintiff averred that Defendant committed (1) negligence in its failure to abide by the terms of the employment contract; (2) the tort of intentional infliction of emotional distress by virtue of termination of his employment; and (3) the tort of negligent infliction of emotional distress.

First employed by Defendant as an hourly employee in May, 1972, Plaintiff assumed a salaried position as a load coordinator at Defendant's Romulus, Michigan, plant in January, 1979. Approximately four months thereafter, Plaintiff was transferred to the Warren, Michigan, facility, where he worked as a merchandiser, holding the position until his discharge on October 29, 1982.

## II. *Defendant's Motion for Summary Judgment*

On March 29, 1985, Defendant filed a Motion for Summary Judgment, seeking a dismissal of entire cause of action. As to the five counts, it made the following arguments:

1. Breach of an Implied Contract of Employment: Plaintiff's claim is based on his subjective expectancies, rather than a written policy or oral representation.

2. Negligent Performance: Michigan law does not recognize a cause of action for a bad faith or negligent failure to perform under a contract.

3. Intentional Infliction of Emotional Distress: Plaintiff failed to plead that Defendant engaged in extreme and outrageous conduct.

4. Negligent Infliction of Emotional Distress: Michigan law does not provide a remedy for an allegedly negligent infliction of emotional distress.

5. Race Discrimination: The evidence reveals that no evidence exists to support a claim of intentional discrimination.

## III. *Breach of Contract Claim*

At his discovery deposition, taken on November 4, 1983, Plaintiff testified that the sole basis for his claim that he would not be discharged except for good cause were performance evaluation forms used by Defendant. A review of the forms indicates that Defendant did not promise, either impliedly or expressly, Plaintiff that he would remain employed unless good cause existed for his discharge.

In *Touissant v. Blue Cross and Blue Shield of Michigan*,[2] the Michigan Supreme Court held that written policy statements or oral representations, which provide that an employee can be discharged only for good cause, may be the underpinnings for a breach of contract action. The *Touissant* case does not vitiate the venerable rule that an employment contract for an indefinite period is terminable by either party, regardless of whether cause exists for the termination.

In *Kay v. United Technologies Corp.*,[3] a discharged employee filed a wrongful termination action against his employer, averring that he and his employer entered into an implied contract whereby he would not be discharged without "just cause." In support of his implied contract claim, the Plaintiff relied upon (1) phraseology contained in his performance appraisal form; (2) a letter mailed to the employees by the company's president, which described the improvements in the employees' benefits and stated that maximum effort by management and the employees would contribute to the company's growth; and (3) a statement made at a deposition by Plaintiff's supervisor that the evaluation forms were used to improve job performance in order for the company and the employees to prosper. Granting summary judgment to the employer, the Sixth Circuit Court of Appeals held that the employer did not make any representations from which the

---

1. M.C.L. § 37.2101 *et. seq.*

2. 408 Mich. 579, 292 N.W.2d 880 (1980).

3. 757 F.2d 100 (6th Cir.1985).

employee could glean that he could be terminated only for good cause:

> In relation to none of these three claims do we find a basis for an employment contract which promised Kay that he would not be discharged without "just cause." Our review of Plaintiff's claims leads us to agree with the District Judge that Plaintiff has not pled facts which establish a right to a jury trial on "just cause" under the Toussaint standards.[4]

The appraisal form used by Plaintiff's employer in the case at bar is similar to the one featured in the *Kay* opinion. The Court holds that the record is devoid of proof for Plaintiff's claim that he reasonably believed, based on the appraisal forms, he would remain employed by defendant as long as good cause did not exist for his termination from employment. At most, Plaintiff had an unsubstantiated subjective belief that he could be terminated only for just cause; such a belief alone does not create an enforceable contract right.[5] Therefore, Defendant's Motion to dismiss the contract claim is GRANTED.

## IV. *Negligent Performance of Contractual Duties*

■ In light of the Court's dismissal of the breach of employment contract claim, Plaintiff's negligent performance of its contractual duties also must fall. Without a duty to abide by the terms of a contract, a party, of course, cannot be held accountable for negligence in failing to perform that duty. Additionally, under Michigan law, a party may not maintain a tort action for a violation of a promise to perform under a contract.[6]

## V. *Intentional Infliction of Emotional Distress*

■ Without specifically setting forth the facts surrounding his claim for Intentional Infliction of Distress, Plaintiff merely incorporated the details supporting his breach of contract claim. Defendant's allegedly wrongful conduct in discharging Plaintiff does not nearly reach the "extreme and outrageous" element of the tort, as required by *Swenson-Davis v. Martel,*[7] along with numerous other Michigan Court of Appeals' cases. A second basis for dismissing this count is the Supreme Court's holding in *Valentine v. General American Credit, Inc.,*[8] in which it held that emotional distress damages are not awardable in a breach of an employment case:

> Mental distress damages for breach of contract have not been awarded where there is a market standard by which damages can be adequately determined. Valentine's monetary loss can be estimated with reasonable certainty according to the terms of the contract and the market for, or the market value of, her service. Mental distress damages are not awarded an employee found to have been wrongfully discharged in violation of a collective bargaining agreement.

> We conclude, because an employment contract is not entered into primarily to secure the protection of personal interests and pecuniary damages can be estimated with reasonable certainty, that a person discharged in breach of an employment contract may not recover mental distress damages.

## VI. *Negligent Infliction of Emotional Distress*

■ Plaintiff also alleged that he sustained emotional distress as a result of Defendant's negligence in performing under the implied contract of employment. As enunciated in *Smith v. Teledyne Indus-*

---

4. *Kay* at 102.

5. *Schwartz v. Michigan Sugar Co.,* 106 Mich. App. 471, 308 N.W.2d 459, 462 (1981); *Reid v. Sears, Roebuck and Co.,* 588 F.Supp. 558, 561 (E.D.Mich.1984).

6. *Kewin v. Massachusetts Mutual Life Insurance Co.,* 409 Mich. 401, 295 N.W.2d 50, 56 (1980), *reh'g denied,* 409 Mich. 1116 (1980).

7. 135 Mich.App. 632, 354 N.W.2d 288, 292 (1984).

8. 420 Mich. 256, 362 N.W.2d 628, 631 (1984).

*tries, Inc.,*[9] Michigan law does not appear to recognize a cause of action for negligent infliction of emotional distress. Clearly, if a Defendant's conduct is not of a magnitude to amount to outrageous, shocking, and mortifying behavior, a Plaintiff cannot recover damages for mental distress. Consequently, Count IV of Plaintiff's Complaint is DISMISSED.

## VII. *Intentional Discrimination in Violation of the Elliot-Larsen Civil Rights Act*

For his race discrimination claim, Plaintiff pleaded that he was terminated on October 29, 1982, while Defendant permitted similarly situated white workers to remain in their positions. In opposition to Defendant's Motion for Summary Judgment on this count, Plaintiff submitted an affidavit, containing mainly conclusory statements.

In support of its motion, Defendant attached an affidavit of Scott Ledgerwood, who was Plaintiff's immediate supervisor in 1982. Therein, Ledgerwood stated that Plaintiff's termination was the result of a reduction in force, which resulted in the lay off of four salaried employees, Plaintiff and three white males. Ledgerwood asserted that Plaintiff and the three white workers were selected for discharge because they were deemed to be "marginal performers."

Ledgerwood's description of Plaintiff as a marginal performer is buttressed by numerous performance appraisals. In many of the evaluations, Plaintiff was described as having a poor attitude, a lack of motivation, and a lack of initiative. A warning contained in a letter dated April 9, 1981, typifies Defendant's evaluation of Plaintiff's performance:

To:   Spurgeon Rouse    Date: April 9, 1981
From: Ken Misiak

Re:   PERFORMANCE REVIEW/60-DAY PROBATION

As we discussed last night, this is to inform you that, effective immediately, you are placed on a 60-day probationary period. Unless you drastically improve your performance in the following areas, your employment with Pepsi-Cola will be terminated:

Aggressiveness
Don't do only what you are told to do, be a leader. Take the initiative.

Merchandising
Meijers does take up much of your time; however, you must find ways to get into other accounts as well.

Hours Worked
Eliminate your preoccupation with hours worked. You have made progress recently—don't quit.

General Attitude
Keep positive thoughts. Don't think that "we owe you." Remember your performance is what counts.

Spurgeon, your performance over the next 60 days will decide your future with this Company. As I told you last night, I will help in any way I can. If you have any questions, please see me.

In a motion for summary judgment, it is incumbent upon the moving party to demonstrate the non-existence of any genuine issue of any material fact necessary to a judgment in his favor.[10] Where, as here, the moving party establishes that there is no genuine issue of material fact, he is entitled to a judgment as a matter of law, unless his opponent produces by affidavit or other documentation that there is a genuine issue for trial.[11] In *First National Bank of Arizona v. Cities Service Co.,*[12] the United States Supreme Court discussed the quantum of evidence the non-moving must produce in order to avert summary judgment:

> It is true that the issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather all that is required is that suffi-

---

9. 578 F.Supp. 353, 355 (E.D.Mich.1984).

10. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 287–289, 88 S.Ct. 1575, 1591–92, 20 L.Ed.2d 569.

11. See, generally, Wright, Law of Federal Courts, § 99 (4th ed. 1985).

12. 391 U.S. 253, 288–289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1967), *reh'g denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968).

38

cient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial ... What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him.

Applying the foregoing precepts to the case at bar, the Court concludes that Defendant is entitled to a judgment as a matter of law on Plaintiff's race discrimination claim. Plaintiff failed to dispute, in a non-conclusory fashion, Defendant's contention that the discharge was made as a consequence of a need to reduce the salaried staff. Plaintiff was laid-off along with three white co-workers by a black vice-president, Bob Bobbit. Viewing the record in a light most favorable to Plaintiff, the Court holds that there is no evidence showing that Mr. Rouse's race was a determining factor in his discharge.

## VIII. *Conclusion*

WHEREFORE, Defendant's Motion for Summary Judgment is GRANTED. Plaintiff's Complaint is DISMISSED.

So Ordered.