Walter A. WALKER, Jr.,
Plaintiff-Appellee,

v.

CONSUMERS POWER COMPANY,
Defendant-Appellant.

No. 84–1653.

United States Court of Appeals,
Sixth Circuit.

Argued March 7, 1986.

Decided July 27, 1987.

Rehearing and Rehearing En Banc
Denied Sept. 10, 1987.

John L. Collins, George M. Brookover,
argued, Foster, Swift, Collins & Coey, P.C.,
Lansing, Mich., for defendant-appellant.

Walter A. Walker, pro se.

Before ENGEL, KENNEDY and MILBURN, Circuit Judges.

ENGEL, Circuit Judge.

Consumers Power Company appeals a judgment entered on a jury verdict finding it liable for damages in the amount of $1,194,000 upon the complaint of plaintiff Walter A. Walker that he had been discharged from his job as a senior engineer in the Nuclear Fuel Supply Department. Walker alleged that he was discharged without just cause contrary to his contractual rights as recognized by the Michigan Supreme Court in *Toussaint v. Blue Cross and Blue Shield of Michigan*, 408 Mich. 578, 292 N.W.2d 880 (1980). Although Walker had framed his original complaint on a number of different grounds, the parties finally proceeded to trial upon three separate counts. Count 1 charged the defendant with having discriminated against plaintiff Walker on account of his race in alleged violation of 42 U.S.C. § 1981 by depriving him of the full and equal benefit of all laws and proceedings as enjoyed by white citizens. Counts 2 and 3 alleged pendent claims under Michigan law. Count 2 alleged that Consumers Power breached its employment contract with Walker, and Count 3 alleged a tort claim for fraudulent misrepresentation.

Prior to trial the court granted defendant's motion for a directed verdict on the claim for fraudulent misrepresentation, and at the close of trial the jury returned a verdict in favor of Consumers Power on the 1981 claim. No cross-appeal has been taken nor does this appeal reveal any errors in the rulings with respect to Counts 1 or 3, which would require us to disturb those results. We therefore confine ourselves to considering the propriety of the verdict and judgment on Count 2.

## I.

Walker commenced employment with Consumers Power as an associate engineer in its Nuclear Fuel Supply Department on March 15, 1971. Walker had been previously employed in Columbus, Ohio as an aerospace engineer with Rockwell International Corporation, and he there married his wife. The two had met at Iowa State University where his wife obtained a degree in Nuclear Engineering. She thereafter obtained a job with Consumers Power. Walker developed contacts with certain officials at Consumers Power after attending a number of company social activities with his wife. Ultimately in the fall of 1970 conversations took place between Walker and Consumers Power officials, particularly Donald Heiks and Robert Atwater, which led to his accepting employment with Consumers Power.

The plaintiff's claim under Count 2 was twofold. He first alleged that part of his oral agreement upon entering into employment was that Consumers Power would not discharge him except for just cause and that Consumers Power thus breached its contract by terminating him. The great bulk of Walker's testimony and other proof went to the quality of his job performance and the nature of his relationships with other personnel with whom he worked or to whom he was responsible. Plainly most of this evidence was advanced in support of the second part of Walker's contract claim that he was unjustly treated not only because of his race but, even more importantly, because of management's failure to recognize and reward adequately his managerial and engineering talents. In describing plaintiff's position to the jury in the course of his closing instructions, the trial judge stated:

> Plaintiff claims that when he took the position with defendant, he was assured that he would be fired only for just cause, and that he would receive promotions and salary increases commensurate with his performance. Plaintiff claims that he entered into a contract of employment with defendant, and that defendant's failure to promote him and provide him with salary increases, and defendant's termination of his employment, constituted breaches of that employment contract.

It is clear that the trial court submitted to the jury as a matter of Michigan law Walker's claim that he was entitled to a favor-

able verdict if it found that a two-pronged contract had been established. The court therefore permitted recovery and damages to be based upon losses from both alleged breaches.

So far as we are aware, Michigan law has not as yet firmly extended the principles of *Toussaint* to include implied promises to promote or grant salary increases. *See Dzierwa v. Michigan Oil Co.*, 152 Mich.App. 281, 393 N.W.2d 610 (1986). Upon a theory that at least part of the claim based on such promises to promote was in all events barred by the applicable Michigan statute of limitations, the trial judge does appear to have cautioned the jury that it could not consider defendant's actions prior to August 12, 1974, which would have limited the plaintiff to recovery for breaches occurring within six years of his having commenced suit. Although Michigan courts have discussed the possibility of a breach of contract claim for failure to grant a promisee a particular position or salary, *Sepanske v. Bendix Corp.*, 147 Mich.App. 819, 384 N.W.2d 54 (1985) *appeal granted sub nom. Teper v. Park West Galleries, Inc.*, 402 N.W.2d 469 (1987); *Bullock v. Automobile Club of Michigan*, 146 Mich.App. 711, 381 N.W.2d 793 (1985), *appeal pending*, we do not decide whether under proper facts such a cause of action may or may not exist.

After a careful review of the entire record, which included a thorough reading of the transcript, we conclude that while plaintiff made out a sufficient case for submission to the jury upon his claim that Consumers Power breached the employment contract by discharging him without just cause, he presented insufficient evidence concerning a breach of contract for failure to promote. Because objections were carefully preserved, and because we are unable to say that the jury verdict on the *Toussaint* claim was unaffected by the improper instruction concerning failure to

promote, we vacate the judgment of the district court and remand for a new trial on the narrow question of unlawful discharge.[1]

Mr. Walker represented himself at the trial, his retained counsel having withdrawn. While he represented himself most ably, this circumstance posed difficulty not only for Walker but also for the trial court and for us. The great bulk of trial testimony consisted of Walker's own statements given in extreme detail. The difficulty confronting the trial court and us was in distinguishing between the statements made by Mr. Walker to the court and jury in his capacity as his own advocate and those statements made under oath in his capacity as a witness. Thus, in evaluating the claim of Consumers Power that Walker failed to make out a sufficient case as a matter of law for submission to the jury, it has been necessary not only to view the evidence in the light most favorable to him as the prevailing party, but also to consider only the evidence that was under oath and thus properly before the jury. We must therefore separate for evaluation the statements given under oath from the unsworn additional assertions made by Walker in his opening and closing statements and interjected freely during the course of trial.

■ We conclude that the uncontradicted testimony of Walker himself concerning statements made by Consumers Power employees shows that such statements would be insufficient as a matter of law to give rise to an enforceable promise for a specific position or salary. Disregarding whether Walker's statements concerning such promises were under oath, none of the statements would reasonably have led Walker to believe that he was entitled to a specific position or salary. The statements offered by Walker in support of his claim simply constituted general assurances that he would receive rewards commensurate with his contributions. Such statements indi-

---

1. While the claims remaining to be retried are pendent, we do not believe under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), that the district court is obliged to dismiss since it is evident that a good-faith case under § 1981 was presented for the jury's consideration and thus was adequate to confer federal question subject matter jurisdiction. The Court's continuing jurisdiction under these circumstances to retry the pendent claim cannot, we believe, be seriously challenged.

cate no more than what any employee may hope for if that employee remains with a company.[2] See *Vandendries v. General Motors Corp.*, 130 Mich.App. 195, 343 N.W.2d 4 (1983), in which the Michigan Court of Appeals refused to recognize an employee's claim for a particular salary commensurate with added responsibilities; it found such a claim too speculative to be submitted to a jury. Walker also introduced evidence about company policy, but the policy only covered promotion procedures and not whether a person could expect promotion. Testimony of Walker at pp. 199–200, 229, May 11, 1984. Such procedures are an inadequate basis for a breach of contract claim. *Dabrowski v. Warner-Lambert Co.*, 815 F.2d 1076 (6th Cir.1987).

In addition to the lack of evidence to support an enforceable promise of promotion or salary, we think that the uncontradicted evidence shows that by August 12, 1974, Walker himself clearly understood that Consumers Power did not intend to honor any such promises, even assuming they had been made. Defense counsel went to great lengths to show that in 1973 Walker should have been aware that he no longer had any right to expect promotions even if such a right had previously existed:

Q: And didn't you have discussion at that point with regard to promotions for you?

A: That's correct.

Q: And as a matter of fact, did Mr. Atwater indicate to you he couldn't say anything to you about what the future would hold with regard to promotions for 1973?

A: That's correct.

Q: Mr. Mosley tell you the same thing?

A: That's correct—well, more or less the same thing, yes.

\*　　\*　　\*　　\*　　\*　　\*

Q: But do you recall him telling you that there was no guarantee for promotions for you at that point?

A: That's correct.

Cross-examination of Walker at pp. 94–95, May 29, 1984. Further testimony on this point showed that Walker did not expect promotions even in view of the assurances given him when he accepted employment:

Q: As a matter of fact, in this meeting with Mr. Atwater in which you were talking about the Gulf Atomic offer, didn't you indicate to him that your interpretation of the corporate policy at that time was a promotion or salary increase was not automatic from a good job evaluation?

A: That's correct.

Recross-examination of Walker at p. 103, May 29, 1984. Therefore, any breach of a promise to promote occurred prior to 1974 and Walker had no legitimate expectation of promotion by that time.

■ Accordingly, we conclude that it was error for the trial court to have submitted to the jury the issue of failure to promote and grant certain compensation, and to have permitted an award and computation of damages based upon the breach of any such promise. Further, because the actual award of damages could only have been justified, if at all, by including therein the loss of salary increases and promotion, we cannot find that the admission of such evidence was harmless or that it did not affect either the determination of liability or the amount of damages.

## II.

■ *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), has generated a substantial amount of litigation both in Michigan courts and in the federal courts.

---

**2.** Walker's testimony regarding promises of promotion and salary showed that he expected "to be receiving titles and pay and formal remunerations, and whatever rewards commensurate with my contributions.... [Atwater] said we can't say exactly, but I know various opportunities will come and without question I am going to hold you accountable to your contributions." Testimony of Walker at p. 62, May 8, 1984. Walker testified on May 14, 1984, to similar assurances. However, in response to a direct question from the defense, Walker admitted that there was nothing specifically said about promotions, contributions, or advancements. Cross-examination of Walker at pp. 29–30, May 29, 1984.

*Toussaint* held that an employment contract provision prohibiting discharge except for cause is legally enforceable even though the contract is not for a definite term. Such a provision may become part of the contract either by express agreement, oral or written, or as a result of the employee's legitimate expectations grounded in the employer's policy statements. *Id.*, 292 N.W.2d at 885.

In this case any expectation on Walker's part that he would remain employed did not arise from an employee manual or general policy statements. Walker solely based his expectation of continued employment and termination only for just cause on a conversation with two Consumers Power employees, Donald Heiks and Robert Atwater. He also asserted that his termination was not for cause because the box marked "for cause" on his termination form had been left blank.

In *Toussaint* and its companion case the employees inquired about job security when they were hired, and were told that each would remain with the company "as long as [he] did [his] job" or that "if he was doing the job, he would not be discharged." *Id.* at 884. Walker testified in this case that he inquired about job security and was given similar assurances that he would not be fired. He said, "I stated at the beginning of my testimony, ... I stated that I had assurances ... that I would, that as long as I performed adequately, as long as I did a good performance on my job, that I would not be fired." Walker's direct testimony at p. 73, May 14, 1984. Regarding this kind of a claim, the *Toussaint* court stated:

> When a prospective employee inquires about job security and the employer agrees that the employee shall be employed as long as he does the job, a fair construction is that the employer has agreed to give up his right to discharge at will without assigning cause and may discharge only for cause (good or just cause). The result is that the employee, if discharged without good or just cause, may maintain an action for wrongful discharge.

*Id.* at 890. Walker also testified that either Heiks or Atwater had said that "as the department started to grow and as they were to grow that I would be growing along with them, that as long as I did a good job, as long as I handled things all that well, as long as I handled or as long as he thought he perceived my ability to be, I had an outstanding future in the department with them." Walker's testimony on cross-examination at p. 32, May 29, 1984.

As pointed out above, Walker's self-representation caused us a great deal of difficulty in reviewing the sufficiency of evidence supporting his *Toussaint* claim. Although many of Walker's statements concerning the conversation with Heiks and Atwater are best characterized as argument rather than testimony and must be disregarded unless supported by testimony under oath, we find that there was sufficient testimony under oath to warrant submitting the termination issue to the jury. For example, on May 14, 1984 in his direct testimony, Walker talked about his conversation with Heiks and Atwater by referring to earlier remarks made in his opening statement to the jury. It is true that the reference to previous statements could cause the subsequent remarks to be characterized as argument rather than testimony, but that construction seems unduly formalistic since Walker did specifically relate the content of his conversation with Heiks and Atwater.

Our conclusion that Walker presented sufficient evidence to warrant submission to the jury of the issue of just cause termination is strengthened by defendant's lack of serious effort to contradict Walker's testimony. Not only did Walker clearly relate the conversation upon which he based his claim, but also Consumers Power did not even question Donald Heiks about that conversation although Heiks appeared as a witness. The third participant, Robert Atwater, testified that although he remembered meeting Walker at various social events, he did not remember any specific conversations. Further, Consumers Power offered no evidence that it in any way tried to negate an expectation of continued employment.

The broad construction given *Toussaint* by the Michigan courts also buttresses our conclusion that Walker provided sufficient evidence to go to the jury. In *Valentine v. General American Credit, Inc.,* 420 Mich. 256, 258–59, 362 N.W.2d 628, 629 (1984), the Michigan Supreme Court reiterated that *Toussaint* found enforceable an employment contract providing for termination only upon just cause. The court then held that the employee could not recover mental distress damages for breach of the employment contract. The Michigan Court of Appeals has similarly construed *Toussaint* broadly by allowing *Toussaint* claims to go to a jury where the employee testified that he was promised that he "would never have to worry" as long as he did his job. *Cowdrey v. A.T. Transport,* 141 Mich.App. 617, 619, 367 N.W.2d 433, 434 (1985), that he "would have a lifetime job as long as he did not steal," *Bullock v. Automobile Club of Michigan,* 146 Mich. App. 711, 715, 381 N.W.2d 793, 794 (1985), *appeal pending,* and that she would "[have] a job a long as [she] did a good job," *Hetes v. Schefman & Miller Law Office,* 152 Mich.App. 117, 119, 393 N.W.2d 577, 578 (1986). That court denies a *Toussaint* claim if the employer expressly indicates that there is no guarantee of future employment or that the employment is terminable at will. *E.g., Ford v. Blue Cross & Blue Shield of Michigan,* 150 Mich.App. 462, 465, 389 N.W.2d 114, 115 (1986); *Riethmiller, M.D. v. Blue Cross & Blue Shield of Michigan,* 151 Mich.App. 188, 198, 390 N.W.2d 227, 232 (1986); *Ledl v. Quik Pik Food Stores, Inc.,* 133 Mich.App. 583, 587, 349 N.W.2d 529, 531 (1984). Consumers Power in this case offered no evidence through an employee handbook or otherwise that they informed employees generally or Walker in particular that employment was at will.

The federal court decisions construing *Toussaint* necessarily support the general proposition under Michigan law that questions regarding the existence of an implied contract provision requiring discharge only for cause should be submitted to the jury. In *Wiskotoni v. Michigan National Bank-West,* 716 F.2d 378, 386 (6th Cir.1983), this court concluded that the issue of whether the employee was discharged for cause should have been submitted to a jury, and that the district court had correctly denied the employer's motion for judgment notwithstanding the verdict. The employee's claim therein was based on language in an employee manual, the concession of the bank president that it was the bank's practice to dismiss only for cause, and the employee's understanding that termination was only for cause. We have similarly denied employees' claims when no representations were made from which employees could have a reasonable expectation that they would be terminated only for cause, *Kay v. United Technologies Corp.,* 757 F.2d 100 (6th Cir.1985); *Wickes v. Olympic Airways,* 745 F.2d 363 (6th Cir. 1984), or when the employer expressly stated that employment was terminable at will, *Dell v. Montgomery Ward & Co., Inc.,* 811 F.2d 970 (6th Cir.1987); *Reid v. Sears, Roebuck & Co.,* 790 F.2d 453 (6th Cir.1986). Neither of those situations is presented here.

Therefore, we conclude that the trial court correctly submitted to the jury Walker's breach of contract claim concerning continued employment absent termination for just cause.

### III.

Given our disposition of Walker's breach of contract claim under *Toussaint* and the fact that we do not disturb the jury verdict of no cause on Walker's section 1981 claim, the jury instructions on remand will be greatly simplified.

In reviewing the jury instructions given, we conclude that no particular instruction constituted error. Although there may have been some confusion between the elements of a successful 1981 claim and the breach of contract claim, that confusion will be avoided since we remand only on the breach of contract claim under *Toussaint.*

■■■ The trial court correctly limited damages on that claim to those losses "caused by the breach only to the extent

that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." In line with that instruction and our disposal of Walker's promotion claim, the trial court may wish to restrict the amount of evidence concerning the salaries of Consumers Power officials higher in the company hierarchy except to the extent that their salaries may reflect general salary increases, which presumably would have affected Walker's salary had he remained at Consumers Power.[3]

█ The trial court also correctly instructed the jury that plaintiff can recover only compensatory damages and that the jury could not grant punitive damages if it found that Consumers Power breached its employment contract with Walker even if the breach was willful and malicious.

On remand, the trial court may wish to consider the propriety of giving an instruction on discounting damages to present value, or alternatively, it may seek a stipulation from the parties that they are willing to trade off the discount factor for an inflation factor.[4] If an award is granted, it should take into account interest from the date damages accrued to the time the complaint was filed. *Michigan Standard Jury Instructions 2d* § 53.04. Under Michigan law a trial court is required to instruct a jury on reducing future damages to present value as of the date of filing the complaint, *Currie v. Fiting*, 375 Mich. 440, 453–54, 134 N.W.2d 611, 616 (1965); *Michigan Standard Jury Instructions 2d* § 53.-03, or must itself reduce the award to present value, *Freeman v. Lanning Corp.*, 61 Mich.App. 527, 233 N.W.2d 68 (1975). *See also Rodgers v. Fisher Body Div., G.M.C.*, 739 F.2d 1102 (6th Cir.1984); *Clissold v. St. Louis-San Francisco Railway Co.*, 600 F.2d 35, 40 (6th Cir.1979). We

raise this issue solely for the attention of the trial judge on remand, and do not imply that the judge erred in not giving such an instruction since counsel for Consumers Power neither requested it nor objected to its absence. *Grewe v. Mount Clemens General Hospital*, 404 Mich. 240, 259, 273 N.W.2d 429, 437 (1978).

### IV.

For the reasons stated above, we REVERSE and REMAND for a new trial, limited to the issue whether Consumers Power breached an employment contract with Walter Walker by discharging him without just cause.

---

3. We also note that the trial court gave proper instructions concerning future damages and the necessity that such damages be foreseeable. In that regard, plaintiff Walker has the duty to mitigate such damages, but the burden is on Consumers Power to establish that Walker did not use reasonable efforts to mitigate his damages. *Fothergill v. McKay Press*, 374 Mich. 138, 132 N.W.2d 144 (1965). At trial below, Consumers Power asserted that Walker failed to mitigate damages, but offered no evidence on that point.

4. The trial court discussed balancing the discount and inflation factors with both Mr. Walker and counsel for Consumers Power. However, the parties never agreed on the record to balance the two factors, and such a stipulation must be put on the record. *Michigan Standard Jury Instructions 2d* § 53.03.