902 F.2d 33
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John KUBICEK, Plaintiff-Appellant,
v.
J. WALTER THOMPSON U.S.A., INC., Defendant-Appellee.
 No. 89-1731.
 United States Court of Appeals, Sixth Circuit.
 May 2, 1990.
 
 Before WELLFORD and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, John Kubicek, instituted this action in Michigan state court against his former employer, J. Walter Thompson U.S.A., Inc. (JWT). The case was then removed on the basis of diversity of citizenship. Upon review, we affirm the decision of the district court.
 
 I.
 
 2
 Kubicek alleged four separate causes of action in his original complaint relating to his discharge from JWT: (1) negligent performance of contract; (2) successful completion of a 30-day probation period; (3) negligence in failing to evaluate job performance; and (4) age discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act, MCLA Sec. 37.2202. Kubicek also alleged that JWT wrongfully impaired his ability to find alternative employment in the advertising field.
 
 
 3
 JWT filed a motion for judgment on the pleadings as to counts I and III of Kubicek's complaint, and Kubicek responded also filing a motion to amend the complaint. The district court granted JWT's motion as to counts I and III, holding that "negligent performance of a contract is not a cognizable claim under Michigan law." In addition, the district court denied Kubicek's motion to amend the complaint, holding that count I of the amended complaint was not "a proper Toussaint claim"[1] relating to a "discharge for cause only" situation. The court held that "there is no cause of action under Michigan law for a breach of implied contract to evaluate." The district court, however, did allow Kubicek to amend the complaint with respect to a fraud claim.
 
 
 4
 JWT then filed a motion for judgment on the pleadings as to count II which the district court granted holding that "Michigan does not recognize a claim for breach of an implied contract absent a 'just cause' promise."
 
 
 5
 With three counts thus dismissed, Kubicek filed a first amended complaint asserting a fraud claim that he was induced to leave his prior advertising position in Germany by the fraudulent conduct of JWT. JWT then filed a motion to dismiss the fraud count. The district court ruled that Kubicek "suffered no compensable injury ... as a result of defendant's fraudulent conduct" and that Kubicek's claimed damages were "too speculative to support a fraud claim." By stipulation, the parties dismissed the remaining count V without prejudice.
 
 
 6
 Kubicek now appeals claiming error in the dismissal of his claims based on an implied employment contract and fraudulent inducement.
 
 
 7
 Kubicek attended the Academy of Fine Arts in Philadelphia, Pennsylvania, and is a graduate of the Philadelphia Museum College of Art. Prior to his employment by JWT, he worked for 26 years in various advertising firms in West Germany and France.
 
 
 8
 JWT approached Kubicek with an offer of employment in its Detroit office, and hired him to work on a proposed special project team which was to develop new design concepts for advertising Ford Motor Company automobiles. Kubicek contends that JWT specifically recruited him because of his experience and reputation in the European style of advertising.
 
 
 9
 JWT later decided not to form the special team and instead utilized Kubicek as a senior art director. JWT became disappointed with Kubicek's performance and in January 1987 placed him on probation, adding this later notice:
 
 
 10
 Our original plan for utilizing your considerable creative talents as a part of a newly formed "Creative Planning Group" has, for reasons we've already discussed, become impossible. I realize that this was a matter of some disappointment for you but as our client's needs change, so must our ways to meet them.
 
 
 11
 Several months ago I reassigned you to work with Chuck Felt and Don Hoenig's group because that is where we most needed your creative input. The results have been disappointing at best. Creative output has been well below expectations for your level of experience and salary. Additionally, there is a noticeable lack of spirit of teamwork between yourself and other members of the creative group. This kind of performance is not acceptable to JWT.
 
 
 12
 I have discussed this situation at length with Dick Howting and he has agreed to placing you on a 30-day probation, starting today. During this time, he wants to assure that you are given an adequate number of assignments to prove your value. He will be responsible for raising your level of aggression in searching out these assignments and completing them with the highest creative standards and in such a way that your energy and spirt of teamwork improves your relationship with your coworkers.
 
 
 13
 John, we need the kind of creative work you have done before you joined us and I urge you to look to the future and to use the next thirty days to prove that you are able and willing to perform consistently at that level.
 
 
 14
 JWT then terminated Kubicek in February 1987.
 
 
 15
 Kubicek testified with respect to the nature of his employment relationship:
 
 
 16
 Q. ... Did anyone tell you how long you could expect to be employed by J. Walter Thompson?
 
 
 17
 A. No.
 
 
 18
 Q. What is your experience in the advertising business, people come and go with frequency?
 
 
 19
 A. I can only go by my, you know, my own experience. If an agency does well for a position, of course the money is better, of course everyone is prepared to leave that nest, but I had no power base here in Detroit. I didn't know anybody, so I though I would be staying with J. Walter Thompson for the rest of my life.
 
 
 20
 Q. You thought that. Did you discuss that with anyone?
 
 
 21
 A. No.
 
 Standard of Review
 
 22
 Because all of defendant's motions in this case may be treated as motions for summary judgment,[2] our standard of review is whether there is no genuine issue as to any material fact and whether defendant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). We review, however, the latter aspect de novo.
 
 
 23
 The defendant can meet its burden by demonstrating "an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the defendant meets this burden, the plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Taking the record as a whole and viewing the facts in a light most favorable to plaintiff, a granting of summary judgment is appropriate where a rational trier of fact could come to but one conclusion which is adverse to the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986) (the court should determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52); Matsushita, 475 U.S. at 587.
 
 II.
 
 24
 Kubicek first argues that JWT breached several implied contracts. Specifically, he alleges that defendant agreed:
 
 
 25
 (1) he would be given "job assignments commensurate with his level of experience which would directly relate to the purpose for which he was hired;"
 
 
 26
 (2) he would "occupy a position that was well-defined by job-description and work assignment;"
 
 
 27
 (3) he would "be allowed a certain latitude in adjusting his creative style (European) to the JWT style;"
 
 
 28
 (4) he would "be an integral part of a 'creative planning group', [sic] which would be charged with the responsibility of developing a new concept of advertising for Ford Motor Company;" and
 
 
 29
 (5) he would be a Senior Art Director and would be assigned a permanent partner (a copywriter) and be paid $80,000 per annum.
 
 
 30
 Kubicek contends that the Michigan Supreme Court in Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880 (1980), recognized a cause of action for the breach of such employment-related assurances.
 
 
 31
 Toussaint held that an implied employment contract for discharge for just cause could only arise from written statements and oral assurances made by a company and its representatives to an employee. The court stated:
 
 
 32
 We hold only that an employer's express agreement to terminate only for cause, or statements of company policy and procedures to that effect, can give rise to rights enforceable in contract.
 
 
 33
 Toussaint, 292 N.W.2d at 890 (emphasis added). In Valentine v. General American Credit, Inc., 420 Mich. 256, 362 N.W.2d 628 (1984), the holding in Toussaint was clarified:
 
 
 34
 Toussaint makes employment contracts which provide that an employee will not be dismissed except for cause enforceable in the same manner as other contracts. It did not recognize employment as a fundamental right or create a new "special" right. The only right held in Toussaint to be enforceable was the right that arose out of the promise not to terminate except for cause.
 
 
 35
 Valentine, 362 N.W.2d at 629 (emphasis added). The Valentine court added:
 
 
 36
 Employers and employees remain free to provide, or not to provide, for job security. Absent a contractual provision for job security, either the employer or the employee may ordinarily terminate an employment contract at any time for any, or no, reason.
 
 
 37
 Id. (footnote omitted) (emphasis added).
 
 
 38
 Kubicek does not state and we imply no assertion that he was promised to be discharged only for cause. The fact that an employer may make certain representations about a particular job to an employee does not give rise to the conclusion that an employee may be discharged only for cause.[3] In Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir.1986), we held that a set of specific employment rules contained in an employee handbook does not imply a just cause employment contract. See Kay v. United Technologies Corp., 757 F.2d 100, 102 (6th Cir.1985) (holding that a letter describing improvements in employee benefits and a program of performance evaluations does not constitute an employment contract terminable only for just cause).
 
 
 39
 Kubicek's claims relate directly to his job assignments and work conditions and have no direct connection with his job security or his compensation.[4] To extend the rationale of Toussaint to employer-created expectations with regard to job assignments or conditions runs contrary to limits established by the Michigan courts and goes beyond the decisions of this court interpreting Michigan law in this regard. See Walker v. Consumers Power Co., 824 F.2d 499 (6th Cir.1987), cert. denied, 484 U.S. 1011 (1988); Dabrowski v. Warner-Lambert Co., 815 F.2d 1076 (6th Cir.1987).
 
 
 40
 Kubicek is clearly an at-will employee who seeks damages for JWT's failure to give him certain types of job assignments. To recognize these claims would require this court to expand greatly the Toussaint rationale. This we are not prepared to do. We, therefore, affirm the decision of the district court denying Kubicek the right to amend his complaint to allege an implied contract on grounds other than that he would be discharged for cause only.
 
 III.
 
 41
 Kubicek next argues that JWT breached an implied contract to complete a written evaluation of him. JWT contends that without a connection between the implied contract and Kubicek's job security, the claim must fail.
 
 
 42
 Standing alone, an employer's promise to evaluate an employee does not constitute a "just cause" employment contract under Toussaint. Diggs v. Pepsi-Cola Metro. Bottling Co., 861 F.2d 914, 917 (6th Cir.1988); Kay v. United Technologies Corp., 757 F.2d 100, 102 (6th Cir.1985); Rouse v. Pepsi-Cola Metro. Bottling Co., 642 F.Supp. 34 (E.D.Mich.1985). Because Kubicek did not claim that JWT promised to terminate him only for good cause, the district court did not err in denying him leave to amend count III of his complaint.
 
 IV.
 
 43
 Kubicek also alleges that the letter outlining the reason for probation, written by Tim Cronin, created a contract not to terminate him if he improved his performance. We have held, however, that the placing of an employee on probation does not give rise to a "just cause" employment contract. See Diggs, 861 F.2d at 917 (citing Grant v. Rockwell Int'l Corp., 811 F.2d 605 (6th Cir.1986) (unpublished per curiam)) ("essentially, Grant holds that [a just cause] promise may not be inferred merely from an employer's establishment of a grievance procedure, or from the creation of probationary status"). We find no error, therefore, in granting JWT judgment on the pleadings on this count.
 
 V.
 
 44
 Finally, Kubicek alleges that he was induced to leave his job at G.G.K. in West Germany by the fraudulent representations regarding job assignments made by JWT. Kubicek complains that he was not told about the problems in forming the creative planning group and that he was never properly utilized by JWT. Kubicek asserts that his damages flow from his having to leave his job in West Germany to accept a job in Detroit and are measured by the loss of income from his job in West Germany.
 
 
 45
 In order to establish actionable fraud, a plaintiff must demonstrate:
 
 
 46
 "(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any of them is fatal to a recovery."
 
 
 47
 Hi-Way Motor Co. v. International Harvester Co., 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976) (emphasis added) (quoting Candler v. Heigho, 208 Mich. 115, 121, 175 N.W. 141, 143 (1919)). Even if all of Kubicek's allegations are taken as true, he has suffered no compensable injury as a result of JWT's representations.
 
 
 48
 Kubicek earned less in Germany than his salary at JWT and was given ample chances to demonstrate his abilities. Although the Michigan courts have not addressed this precise issue, several cases suggest that Michigan would not recognize a cause of action in fraud for an employee who gives up a current job to accept an at-will position with a new company. See, e.g., Sepanske, 384 N.W.2d 54 (holding that an employer's breach of a promise regarding a condition of employment that did not alter the at-will nature of the position entitled the terminated employee to only nominal damages); Goldstein v. Kerr, 82 Mich.App. 723, 728, 267 N.W.2d 165 (1978) (holding that "an [at-will] employee's detrimental reliance in foregoing another employment opportunity in order to accept the offered employment does not estop the employer from terminating his employment contract.") We conclude that Kubicek knowingly took a risk by leaving his existing job for the new one with JWT that could be terminated at any time with or without cause. Kubicek, therefore, did not suffer a compensable injury when he was terminated from his at-will position at JWT.[5] See Ullman v. Olwine, Connelly, Chase, O'Donnell & Weyher, 123 F.R.D. 237 (S.D.Ohio 1987) (holding that an employee that leaves one position in favor of another higher-paying, at-will position may not maintain a claim for fraud); Romack v. Public Service Co. of Indiana, 499 N.E.2d 768, 775 (Ind.App.1986) (holding that leaving one job to accept another does not constitute a "sufficient independent detriment to support a constructive fraud claim").
 
 
 49
 Kubicek's damages also appear to be remote and speculative. See Clissold v. St. Louis-San Francisco Ry. Co., 600 F.2d 35, 39 (6th Cir.1979) (holding that damages for future consequences of an injury are recoverable only if there is "such a degree of probability of such consequences as to amount to [a] reasonable certainty that they will result").
 
 
 50
 Finding no merit to any of Kubicek's arguments, we accordingly AFFIRM.
 
 
 
 [1]
 Toussaint v. Blue Cross & Blue Shield of Michigan, 408 Mich. 579, 292 N.W.2d 880 (1980)
 
 
 [2]
 Defendant brought motions for judgment on the pleadings (Rule 12(c)), for partial summary judgment (Rule 56), and for failure to state a claim upon which relief can be granted (Rule 12(b)(6)). All of these motions may be treated as motions for summary judgment
 
 
 [3]
 See Boynton v. TRW, Inc., 858 F.2d 1178 (6th Cir.1988) (en banc) (detailing situations involving employer-created expectations); see also Ariganello v. Scott Paper Co., 588 F.Supp. 484 (E.D.Mich.1982) (severance pay); Marwil v. Baker, 499 F.Supp. 560 (E.D.Mich.1980)) (tenure review); Bullock v. Automobile Club Mobile of Michigan, 432 Mich. 472, 444 N.W.2d 114 (1989) (discharge procedures); Sepanske v. Bendix corp., 147 Mich.App. 819, 384 N.W.2d 54 (1985) (social service leave policies); Bullock v. Automobile Club of Michigan, 146 Mich.App. 711, 381 N.W.2d 793 (1985) (compensation based on sales commissions). These cases enforced specific promises involving compensation or termination which are not at issue in this case
 
 
 [4]
 JWT paid Kubicek $80,000 per year as it promised
 
 
 [5]
 Moreover, Kubicek's fraud claims are indistinguishable from his contract claims and arguably cannot support a separate fraud action. Cf. Marcella v. ARP Films, Inc., 778 F.2d 112 (2d Cir.1985)