BULLOCK v AUTOMOBILE CLUB OF MICHIGAN

Docket No. 71773. Submitted November 14, 1984, at Detroit.—Decided November 4, 1985. Leave to appeal applied for.

Plaintiff, William J. Bullock, was hired in 1968 by defendants, the Automobile Club of Michigan and Auto Club Insurance Association, as a commission salesperson. In 1978 a union was certified as bargaining representative for the defendant's commission salespersons. Negotiations were conducted in an effort to reach a collective bargaining agreement but ended in an impasse. At that time the defendants implemented minimum production standards which had been included in the defendants' last offer to the union. Later negotiations between the union and the defendants were fruitless and no collective bargaining agreement was ever reached. The union was eventually decertified. Plaintiff was notified that his employment as a commission salesperson would be terminated because of his failure to meet the minimum production standards. He was offered and accepted a lower-paying position. Plaintiff brought an action alleging that his demotion, as well as a change in the method of compensation of commission sales representatives, violated a preexisting employment contract. Plaintiff later amended his complaint to include claims of age discrimination, unjust enrichment, conversion and negligent evaluation. Defendants filed a motion for accelerated or, in the alternative, summary judgment. The Wayne Circuit Court, Michael L. Stacey, J., denied defendants' motion, and defendants appealed by leave granted. *Held:*

1. In the absence of a written employment contract expressing the mutual intent of the parties, the questions of whether a contract was formed, what the terms of the contract are, and

REFERENCES FOR POINTS IN HEADNOTES
[1-5] Am Jur 2d, Master and Servant §§ 14-70.
    Employee's arbitrary dismissal as breach of employment contract terminable at will. 62 ALR3d 271.
[5] Am Jur 2d, Labor and Labor Relations §§ 1920 *et seq.*
    Breach or repudiation of collective labor contract as subject to, or as affecting right to enforce, arbitration provision in contract. 29 ALR3d 688.

whether the terms have been validly modified are questions for the trier of fact.

2. The question of whether the defendants' past policies or practices are terms of the employment contract, which bears directly on the question of whether the employer was free to change the policies or practices unilaterally, is a question of fact. Although the trial court relied upon the wrong reasons, it reached the right result on this issue, and its decision will not be reversed.

3. Plaintiff's preexisting contract rights were not superseded by the results of the collective bargaining because no collective bargaining agreement was ever reached.

4. Jurisdiction of the action was properly in the state court.

Affirmed.

1. LABOR RELATIONS — EMPLOYMENT CONTRACTS — DISCHARGE FROM EMPLOYMENT.

A provision of an employment contract providing that an employee shall not be discharged except for cause is legally enforceable even though the contract is for an indefinite term; such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements.

2. LABOR RELATIONS — PERSONNEL POLICIES.

An employee has a right to have stated personnel policies and practices of the employer applied to his own employment, even though there were no preemployment negotiations, no meeting of the minds on the subject, and no knowledge on the part of the employee as to the particularities of the policies or that the employer is free to change them unilaterally.

3. LABOR RELATIONS — EMPLOYMENT CONTRACTS.

A contract of employment is the result of a voluntary act conveying the mutual intent of the parties to be bound by its terms and provisions; where there is no written evidence of mutual intention, the questions of whether the contract was formed, what its terms are, and whether the terms have been validly modified are questions for the trier of fact.

4. LABOR RELATIONS — PERSONNEL POLICIES — EMPLOYMENT CONTRACTS.

An employee's expectations of the continuation of the employer's personnel policy cannot be considered reasonable or legitimate where the employer has regularly changed its policy unilater-

ally; the question of whether there was a reasonable and legitimate expectation in the employee that the employer's policy or practice was a term of the employment contract, which bears directly on the question of whether the employer was free to change the policy or practice unilaterally, is a question for the trier of fact.

5. LABOR RELATIONS — EMPLOYMENT CONTRACTS — COLLECTIVE BARGAINING — ACTIONS.

The contract rights of individual employees under their employment contracts are not extinguished during negotiations for a collective-bargaining agreement pursuant to the National Labor Relations Act until the parties have entered into a valid agreement; until such an agreement is entered into, an employee may pursue an action in a state court for breach of the employment contract.

*Law Offices of John W. Mason, P.C.* (by *John W. Mason* and *Mary Taylor Zick),* for plaintiff.

*Finkel, Whitefield & Selik* (by *Robert J. Finkel),* and *Kalvin M. Grove* and *Steven L. Gillman,* for defendants.

Before: HOOD, P.J., and BRONSON and R. L. TAHVONEN,* JJ.

PER CURIAM. Defendants appeal by leave granted from an order of the Wayne County Circuit Court denying defendants' motion for accelerated and/or summary judgment.

In May of 1968, plaintiff was hired by defendants as a commission salesperson. At that time, the sales representatives were not members of any union. On February 7, 1978, the Michigan Sales Association (union) was certified as the exclusive bargaining representative for defendants' commission salesperson.

Starting in October, 1980, the company and the union met at least 28 times in an effort to negoti-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

ate a collective bargaining agreement. The primary dispute throughout the negotiations centered around the implementation of mandatory production standards. Defendants insisted that the collective bargaining agreement contain scheduled minimum production standards, which the union vigorously resisted.

Defendants submitted a final offer to the union in July, 1981, which included the disputed minimum production standards. At a general membership meeting held on August 5, 1981, the union voted to reject the company's final offer, resulting in an impasse.

On September 1, 1981, defendants implemented the production standards which were in its final offer. Under these standards, if a sales representative failed to meet a predetermined production standard during any particular month, the representative received an oral warning and, in subsequent months, a written warning, probation, and termination or demotion if the representative failed to fulfill the standards for four successive months.

On October 8, 1981, defendants and the union resumed negotiations and held ten additional negotiating sessions without reaching an agreement. Negotiations broke off on January 4, 1982, reconvened on February 24, 1982, and no further meetings were held after March 18, 1982. In October, 1982, the union was decertified.

In the meantime, on February 19, 1982, defendants notified plaintiff that his employment as a commission sales representative would be terminated as of February 28, 1982, for failure to fulfill the requisite production standard. Defendants offered and plaintiff accepted a lower paying position as a salaried member advisor.

Subsequently, on July, 1982, plaintiff filed the

action at bar in Wayne County Circuit Court alleging breach of an employment contract, relying on *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), *reh den* 409 Mich 1101 (1980). According to plaintiff, when he was hired in 1968, defendants made certain promises and representations to him, including: (1) that he would have a lifetime job as long as he did not steal; (2) that he would be employed as a sales representative and earn a 7% commission for his sales, a method of compensation which had been in effect for many years; and (3) if he worked hard to build up his "book of business", which consists of accumulated policies and memberships that a commission salesperson builds up over the years, he could enjoy his later working years by realizing those commissions.

According to plaintiff, his demotion, which was allegedly predicated on his failure to meet the production standards, and the implementation of a unit compensation program in place of the commission compensation, violated this preexisting contract.

On August 10, 1982, defendants filed a petition for removal to federal court on the basis that plaintiff's cause of action was governed exclusively by the National Labor Relations Act and depended entirely on federal law. Once in federal court, defendants filed a motion to dismiss alleging that the National Labor Relations Board (NLRB) had exclusive jurisdiction over plaintiff's claim and that the United States District Court lacked subject matter jurisdiction. Plaintiff filed a motion to remand to the circuit court on August 30, 1982, pointing out the inconsistent positions taken by defendants in circuit court and in federal court. Federal District Court Judge Anna Diggs Taylor heard oral arguments on October 25, 1982, and

remanded the case to Wayne County Circuit Court on November 1, 1982.

In Wayne County Circuit Court, on November 16, 1982, defendants filed a motion for accelerated or, in the alternative, summary judgment. On February 16, 1983, before the hearing on this motion, plaintiff filed a first amended complaint which added counts for age discrimination, unjust enrichment, conversion and negligent evaluation. Two days later, the trial court heard the parties' arguments concerning accelerated and summary judgment and denied defendants' motion, from which defendants appeal.

Defendants first argue that the trial court erred in refusing to dismiss plaintiff's action because *Toussaint* expressly permits an employer to unilaterally change its employment policies so long as the employees are notified of the changes and the new policies are applied fairly, consistently and uniformly. We disagree that this is the holding of *Toussaint.*

For their argument, defendants rely on the following language in *Toussaint:*

"While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced. The employer secures an orderly, cooperative and loyal work force, and the employee the peace of mind associated with job security and the conviction that he will be treated fairly. No pre-employment negotiations need take place and the parties' minds need not meet on the subject; *nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally.* It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices,

they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee. The employer has then created a situation 'instinct with an obligation'.

\* \* \*

"We hold that employer statements of policy, such as the Blue Cross Supervisory Manual and Guidelines, can give rise to contractual rights in employees without evidence that the parties mutually agreed that the policy statements would create contractual rights in the employee, *and, hence, although the statement of policy is signed by neither party, can be unilaterally amended by the employer without notice to the employee,* and contains no reference to a specific employee, his job description or compensation, and although no reference was made to the policy statement in pre-employment interviews and the employee does not learn of its existence until after his hiring." *Id.,* pp 613-615. (Emphasis added, footnotes omitted.)

This holding must be construed in light of the factual context of *Toussaint* in order to be fairly understood.

Charles Toussaint was employed in a middle management position with Blue Cross. After he was employed for five years and discharged, he commenced an action against his former employer claiming that the discharge violated his employment agreement which permitted discharge only for cause. This action resulted in a jury verdict rendered for Toussaint in the amount of $72,835.52.

On appeal this Court reversed the jury verdict for Toussaint holding that "a contract for permanent employment or employment for life is a contract for an indefinite period and terminable at the will of either party" and "*cannot* be made other than terminable at will by a provision that states that an employee will not be discharged except for cause". (Emphasis supplied.) *Toussaint v*

*Blue Cross & Blue Shield of Michigan,* 79 Mich
App 429, 434-435; 262 NW2d 848 (1977).

The questions thus presented to the Supreme
Court were whether this Court had correctly
stated the law and, if not, whether there was
sufficient evidence presented to make submissible
to the jury the question of whether there was an
agreement for a contract of employment termina-
ble only for cause. The Supreme Court resolved
the first question and reversed the decision of this
Court, holding that:

"1) a provision of an employment contract providing
that an employee shall not be discharged except for
cause is legally enforceable although the contract is not
for a definite term—the term is 'indefinite,' and

"2) such a provision may become part of the contract
either by express agreement, oral or written, or as a
result of an employee's legitimate expectations
grounded in an employer's policy statement". 408 Mich
598.

As to the second question, the Supreme Court
held that in Toussaint's case there was sufficient
evidence of an express agreement to justify sub-
mission to the jury *and* that "[a] jury could also
find for Toussaint based on legitimate expectations
grounded in his employer's written policy state-
ments set in the manual of personnel policies". *Id.,*
p 599. It is to this latter conclusion of the Supreme
Court that the two passages cited by defendant
speak.

In reaching its conclusion, the Court focused on
whether the evidence could support a finding that
Toussaint gave consideration for his employer's
promise in the employee manual to terminate its
employees only for just cause. It recognized that in
setting forth personnel policies and procedures the
employer contemplated mutual adherence to the

policy, thereby deriving benefits from a cooperative and loyal work force. *Id.,* pp 613-615. These benefits were deemed sufficient consideration to make the just cause policy in the manual binding on the employer. *Id.,* In the passages cited by defendants, Justice LEVIN and the majority were concerned that employers could implement such company policies but then apply them arbitrarily. To avoid sanctioning such capricious action, the Supreme Court held, and rightfully so, that once an employer chooses "to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee" the employer has created a "situation 'instinct with an obligation' ". *Id.,* p 613. This is so even where there are no preemployment negotiations, no meeting of the minds on the subject, and no knowlege on the part of the employee as to the particularities of the policies or that the employer is free to unilaterally change them. These conditions are not prerequisites to the formation of an employee's right to have stated personnel policies and practices of the employer applied to his own employment. Compare, *Rasch v East Jordan,* 141 Mich App 336, 344-345; 367 NW2d 856 (1985).

This is the narrow holding of *Toussaint. Toussaint* did not abrogate the traditional notions of contract law in general nor did it directly address the issue presented in the instant case.

The contract of employment still remains the result of a voluntary act, conveying the mutual intent of the parties to be bound by its terms and provisions. See *McDonald v Boeing,* 43 Mich 394; 5 NW 439 (1880). Further, where there is no written evidence of mutual intention, whether the contract

was formed, what its terms are, and whether the terms have been validly modified continue to be questions for the trier of fact.

In rejecting defendants' construction of *Toussaint* the trial court held "while it is true that an employer is not bound by stated policies of performance, he must make known to the employees that these policies may change in the future. It is not enough that the employer makes the actual change of policy known to those working pursuant to it; it *must* also make sure that they knew these policies can be changed. This results in an issue of fact whether there was expectation of a continued policy in practice or knowledge that such policies could and would be changed." (Emphasis added.)

We have already explained why the trial court was correct in rejecting defendants' construction of *Toussaint*. However, we do not find the trial court's reasoning to be based on a correct reading of *Toussaint*. The *Toussaint* Court wrote:

> "Employers *can* make known to their employees that personnel policies are subject to unilateral changes by the employer. Employees would then have no legitimate expectation that any particular policy will continue to remain in force." 408 Mich 619 (Emphasis added.)

There is a fundamental difference between the words "must" and "can". In using the word "can" the *Toussaint* Court was advising the employer that it "can" protect itself against a reasonable expectation arising in an employee that a policy or practice is part of the employment contract by informing the employee that its policy can be changed at any time. The Supreme Court does not state, as did the trial court, that an employer *must* give such notice or otherwise be barred from unilaterally effecting policy changes in the future. To

the contrary, such notice or knowledge can be construed from the circumstances surrounding the employment. For instance, this Court has held that where an employer has unilaterally changed its personnel policy plans regularly, the plans cannot give rise to rights enforceable in contract because the expectations of the employee cannot be considered reasonable or legitimate. *Engquist v Livingston County,* 139 Mich App 280, 283-284; 361 NW2d 794 (1984).

However, we agree that the question of whether there was a legitimate and reasonable expectation in the employee that an employer's policy or practice is a term of the employment contract which bears directly upon the question of whether the employer is free to unilaterally change the policy or practice is for the trier of fact. Therefore, we will not disturb the decision of the trial court although it was reached through incorrect reasoning. *DeWitt Twp v Clinton County,* 113 Mich App 709, 713; 319 NW2d 2 (1982).

Accordingly, we hold that whether the terms of plaintiff's employment contract included provisions (1) that he would have a lifetime job as long as he did not steal, (2) that he would be employed as a sales representative and compensated by commissions on his sales throughout his employment, and (3) that he could enjoy his later working years by realizing those commissions are questions of fact which must be decided by the trier of fact. Once the terms of plaintiff's employment contract are determined, then the ultimate issue of whether defendants breached the employment contract with plaintiff by implementing the new production standards and demoting plaintiff pursuant to those standards can be determined by the trier of fact.

Defendants next argue that plaintiff's complaint should be dismissed because an employer's unilat-

eral implementation of its final offer after reaching a bona fide impasse in the negotiation of an initial collective bargaining agreement has the same effect as reaching a collective bargaining agreement and supersedes all prior individual employment contracts. According to defendants, this occurred in the case at bar and requires that federal law must govern plaintiff's case. Therefore, plaintiff's *Toussaint* claims must be dismissed as *Toussaint* was never intended to apply in the context of union negotiations.

Reduced to its basic meaning, collective bargaining is no more than negotiating. It only brings about contract rights, it does not consist of them. As in a one-on-one agreement where there is no meeting of the minds, collective bargaining which does not bear an agreement is no more than a process without a result. As such, bargaining to impasse on the formation of a new agreement creates nothing that could supersede preexisting contract rights.

Since no collective bargaining agreement was ever reached in this case, plaintiff's preexisting contract rights are still in effect. Redress for any alleged breach of those rights is properly brought in state courts. The trial court, therefore, properly denied summary judgment on this ground.

Defendants further argue that even if plaintiff's individual contract survived the selection of the union, the terms of the contract were superseded by the terms validly implemented after an impasse was reached in collective bargaining. Defendants claim, therefore, that state jurisdiction is preempted, and that the National Labor Relations Board has exclusive jurisdiction. This argument was rejected by this Court in a companion case

against defendants with which we agree. *Roberts v Automobile Club of Michigan,* 138 Mich App 488; 360 NW2d 224 (1984).

Affirmed.