**Jack R. CREMEANS, Plaintiff–Appellee, Cross–Appellant,**

v.

**CITY OF ROSEVILLE, a Municipal Corporation, City of Roseville Police Department, Thomas H. Asman, Chief of Police Department and member of the City of Roseville Retirement Board, Roseville Police Officer's Association, a nonprofit labor organization, The City of Roseville Retirement Board, and T. Vandamme, Margaret Spybrook, L. Haggerty and William Powell, Members of the City of Roseville Retirement Board, Jointly and Severally, Defendants–Appellants, Cross–Appellees.**

**Nos. 86–1401, 86–1446.**

United States Court of Appeals, Sixth Circuit.

Argued May 8, 1987.

Decided Oct. 28, 1988.

Rehearing and Rehearing En Banc Denied Dec. 14, 1988.

Robert D. Brignall (argued), Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore, Sills & Poling, P.C., Detroit, Mich., for defendants-appellants, cross-appellees.

Carl F. Schier (argued), Schier & Denewith, Richard D. Massuch, Birmingham, Mich., for plaintiff-appellee, cross-appellant.

Before ENGEL, Chief Judge,* LIVELY ** and KRUPANSKY, Circuit Judges.

ENGEL, Chief Judge.

This action is before us on cross-appeals by the plaintiff Jack R. Cremeans and by defendants Thomas H. Asman and Thomas VanDamme. Cremeans claims that the trial court erred in refusing to reinstate him to his position as a patrolman following a favorable jury verdict on his 42 U.S.C. § 1983 claim. Asman and VanDamme allege that as a matter of law plaintiff failed to present sufficient evidence to create a jury question that plaintiff's right to procedural due process was violated. Asman and VanDamme do not argue on appeal that they were entitled to qualified immunity. They have not challenged the damages awarded as excessive, nor have they challenged the trial court's instructions to the jury on the applicable law. Because we find that as a matter of law there was no due process violation, we need not address the reinstatement issue.

## FACTS

This case is based upon Cremeans' claim that he was denied procedural due process when he was placed on involuntary medical disability retirement from the City of Roseville Police Force. On May 1, 1967, Cremeans began work as a patrolman with the City of Roseville. Cremeans suffered a knee injury when he slipped and fell in a non-work related incident in October of 1978.[1] As a result of that injury he missed approximately three months of work. Cremeans' knee problems continued. In 1980 he missed fifteen or sixteen days following arthroscopic surgery on his knee. When plaintiff sought to return to work, Chief of Police Asman required him to file a doctor's statement indicating that he was fit to return. Cremeans gave Asman a letter sent by a Dr. O'Connell evaluating Cremeans' condition. Dr. O'Connell's letter stat-

ed, "[I]n view of the arthritic changes in the knee joint, he [plaintiff] is advised to consider changing jobs, to one that d[oes] not require him to be on his feet as much as a police officer would."

Police Chief Asman then petitioned the Retirement Board to consider a medical disability retirement. A letter dated December 2, 1980 from the city clerk informed plaintiff that Asman had requested that his disability retirement be placed on the Retirement Board's agenda. The letter further informed plaintiff what section of the City Charter the request was based upon and informed plaintiff that he was scheduled to undergo a physical examination by a Dr. Wilson on December 10, 1980. Dr. Wilson's medical report concluded by stating, "I would have serious doubts as to Mr. Cremeans' physical ability to continue to perform as a patrolman."

On January 7, 1981, the Retirement Board considered Cremeans' case. Cremeans had had approximately 24–26 hours notice before this hearing. When he appeared at the hearing Cremeans was invited to make a statement. Cremeans pointed out that he had only brief notice of the hearing and that he had not had the opportunity to employ an attorney. The Board offered to table the decision and give Cremeans additional time to prepare. Cremeans declined this offer, stating that he had "serious doubts as to whether he could continue to perform the duties of a patrolman," and would leave the matter in the Board's hands. The Board voted unanimously to grant plaintiff disability retirement and advised Cremeans that if his physical condition improved he could petition for reinstatement.

In May of 1981, Cremeans was hospitalized for a heart attack. Cremeans never sought reinstatement to the Roseville Police Department until filing this lawsuit. Further, during the course of this suit he

---

* The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988.

** The Honorable Pierce Lively stepped down from the Chief Judge's position on April 1, 1988 and remains an active Circuit Judge.

1. Cremeans had a history of knee injuries, including high school football injuries and a knee injury which resulted in his receiving a medical discharge from the Air Force in 1959.

has changed his mind several times as to whether he wants to be reinstated as a patrolman for the City of Roseville.

## PROCEDURAL HISTORY

On October 27, 1982, Cremeans filed a five-count complaint in the United States District Court for the Eastern District of Michigan. Only two of these counts went to the jury.[2] Plaintiff's 42 U.S.C. § 1983 claim went to the jury only against the individual Board members: Asman, Van-Damme, Spybrook and Haggerty. The state law claim for intentional infliction of emotional distress went to the jury only as to defendants Asman and the City of Roseville.

The case went to the jury by special verdict. Fed.R.Civ.P. 49. The jury found that defendants Asman and VanDamme violated the plaintiff's constitutional right to procedural due process. The jury awarded plaintiff $100,625 in compensatory damages and punitive damages in amounts of $5,000 and $3,000 against Asman and Van-Damme respectively. The jury found no cause of action against either Asman or the City of Roseville on the state law claim of intentional infliction of emotional distress.

The trial judge considered plaintiff's request for the equitable relief of reinstatement on the § 1983 claim separately. The court denied plaintiff's request for reinstatement finding that plaintiff was medically incapable of resuming his job as a police officer and that there remained neither a party defendant nor a nonparty privy capable of providing the injunctive relief requested by plaintiff. The parties thereafter filed cross-appeals.

## PROCEDURAL DUE PROCESS

Defendants argue that Cremeans failed to provide sufficient evidence to create a jury question that plaintiff's right to procedural due process had been violated. Defendants have protected their right to make the argument by moving for a directed verdict at the close of plaintiff's proof and by making a motion for a judgment N.O.V. or a new trial within 10 days of the entry of judgment. Fed.R.Civ.P. 59.

Plaintiff's complaint alleges that the procedure used in placing him on non-duty disability retirement was an unconstitutional violation of the due process clause of the fourteenth amendment. Plaintiff's "federal constitutional claim depends on [his] having had a property right in continued employment." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). "Property interests are not created by the

---

2. The five counts in the complaint were as follows: count I alleged that the City of Roseville (Roseville), the Roseville Police Department (Police Department), the City of Roseville Retirement Board (Board), Thomas Asman (Asman, both as Police Chief and Board member) and the other members of the Board, including Thomas VanDamme, Margaret Spybrook, Larry Haggerty, and William Powell violated plaintiff's right to procedural due process in violation of 42 U.S.C. § 1983; count II alleged wrongful discharge by Roseville, the Police Department, the Board and Chief of Police Asman; count III alleged defamation by Roseville, its Police Department and Asman; count IV alleged intentional infliction of emotional distress by all defendants; and count V alleged a failure to represent by the City of Roseville's Police Officers' Association (Association).

On July 24, 1984 count III was dismissed by stipulation of the parties. On July 25, 1984 the trial judge granted defendants' motions for summary judgment as to counts I and II. The judge also granted defendants' motion for partial summary judgment as to count IV to all defendants except the Association. Therefore, as of July 25, 1984 only counts IV and V of the original complaint remained against the Association. On August 3, 1984, plaintiff voluntarily dismissed its claims against the defendant Association and defendant William Powell.

On June 20, 1985, the trial judge granted plaintiff's motion for relief from the entry of summary judgment, and upon reconsideration, denied the defendants' motion for partial summary judgment. Plaintiff withdrew his claim for intentional infliction of emotional distress against defendants Spybrook and Haggerty on August 20, 1985. The court also dismissed the intentional infliction of emotional distress claim against VanDamme on the same day. Counsel stipulated for the record on August 28, 1985 that the Board and the Police Department were all part of the municipal corporation of the City of Roseville. Further, on the 28th, the trial court granted Roseville's motion for a directed verdict on the section 1983 claim. The court, however, denied the motion for directed verdict by the individual Board members.

Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....' (citation omitted)." *Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491. Cremeans' complaint relied upon Mich.Comp.Laws Ann. §§ 38.-501–38.518 for that property right. The defendants admitted that the City of Roseville adopted and incorporated by reference the code sections described above but deny that they applied in this case. The sections described above set up local civil service commissions for cities, villages and municipalities having a fire and/or police department. Section 38.514 states in pertinent part "No member of any fire or police department within the terms of this act shall be removed, discharged, reduced in rank or pay, suspended or otherwise punished except for cause." Mich.Comp.Laws Ann. § 38.514 (1985).[3]

The problem before us is that the actions complained of were taken by the "Roseville Retirement Board, [at a] regular meeting, Wednesday, January 7, 1981" and not by a Civil Service Commission. The Michigan code sections outlining the authority of retirement boards are found in Mich.Comp. Laws Ann. §§ 38.551–38.572. Section 38.-556(2)(e) states that "[u]pon the application of a member, or his department head, a member in service who has 5 or more years of service credit and who becomes totally and permanently incapacitated for duty by reason of a personal injury or disease occurring as the result of causes arising outside the course of his employment by the city, village, or municipality *may be retired by the retirement board." Id.* (emphasis added). The Michigan Supreme Court has clearly rejected appellant's apparent argument that retirement constitutes removal under the act establishing local civil service commissioners.

[C]learly the legislature when it enacted Act 345 [P.A. 1937, No. 345 authorizing local retirement boards, codified at Mich. Comp.Laws Ann. §§ 38.551–38.572] knew of the existence of Act 78 of 1935 [P.A. 1935, No. 78 authorizing local civil service commissions, codified at Mich.Comp. Laws Ann. §§ 38.501–38.518], and the two must be read together. *This being so, it is obvious to the court that the legislature intended Act 78 not to cover retirement but merely to cover performance of duty, misfeasance, malfeasance, nonfeasance and so forth, but not to cover retirement because the legislature after adopting Act 78 provided for the establishment of a retirement system under Act 345.*

*Molinaro v. Driver,* 364 Mich. 341, 111 N.W.2d 50, 55 (1961) (emphasis added).

The parties have not cited any authority nor have we uncovered any case law determining whether Mich.Comp.Laws Ann. § 38.556(2)(e) creates a property interest in continued employment. As was the case in our recent decision in *Duchesne v. Williams,* 849 F.2d 1004, 1006 (6th Cir. 1988) (en banc), we need not resolve this complicated state law issue because as a matter of constitutional law Cremeans failed to state a due process violation.

Cremeans made no constitutional challenge to the statute under which he was discharged. He also failed to contest the Retirement Board's decision under the procedures provided by statute.[4] Therefore, the only question before us is whether the procedure used in discharging the plaintiff was constitutionally adequate. The Supreme Court recently addressed the issue of due process in a pretermination hearing

---

**3.** In 1986 this section was amended. It now states "[A] member of any fire or police department *encompassed by* this act shall *not* be removed, discharged, reduced in rank or pay, suspended, or otherwise punished except for cause...." Mich.Comp.Laws Ann. § 38.514 (Supp.1988).

**4.** Mich.Comp.Laws Ann. § 38.555 states "The [retirement] board shall be a quasi-judicial body, and its actions shall be reviewable by writ of certiorari only." Mich.Comp.Laws Ann. § 38.514 provides for direct appeal of a civil service commission's decision to the circuit court of the county wherein the city, village or municipality is situated. Such an appeal must be taken within 90 days from the entry of the civil service commission's final order. *Id.* Cremeans did not attempt to challenge the Retirement Board's decision through either method described above.

in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 533, 105 S.Ct. at 1488 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)).

> An essential principle of due process is that a deprivation of life, liberty or property "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313 [70 S.Ct. 652, 656, 94 L.Ed. 865] (1950). We have described the "root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." *Boddie v. Connecticut*, 401 U.S. 371, 379 [91 S.Ct. 780, 786, 28 L.Ed. 2d 113] (1971) (emphasis in original); *see Bell v. Burson*, 402 U.S. 535, 542 [91 S.Ct. 1586, 1591, 29 L.Ed.2d 90] (1971). This principle requires "some kind of hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Board of Regents v. Roth*, 408 U.S. [564], at 569–70 [92 S.Ct. 2701 at 2705, 33 L.Ed.2d 548 (1972)]; *Perry v. Sindermann*, 408 U.S. 593, 599 [92 S.Ct. 2694, 2698, 33 L.Ed.2d 570] (1972).

*Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493.

The Court also noted that a pretermination hearing, though necessary, need not be elaborate.

> "[T]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Boddie v. Connecticut,* 401 U.S. at 378 [91 S.Ct. at 786]. See *Cafeteria Workers v. McElroy,* 367 U.S. 886, 894–895 [81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230] (1961). In general, "something less" than a full evidentiary hearing is sufficient prior to adverse administrative action. *Mathews v. Eldridge,* 424

U.S. [319], at 343 [96 S.Ct. 893, 907, 47 L.Ed.2d 18 (1976)].

*Loudermill,* 470 U.S. at 545, 105 S.Ct. at 1495.

> "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481 [92 S.Ct. 2593, 2600, 33 L.Ed.2d 484] (1972). Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests affected.... [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903.

The theory upon which Cremeans' section 1983 complaint was submitted to the jury was that the individual board members deprived him of his constitutional right to due process. We are not concerned with determining whether the procedure involved strictly complied with state law. There was a state law remedy for such a violation which Cremeans chose to forego. A state is allowed to provide more elaborate protection of employees' rights than is provided by the federal law and the Constitution. What we are concerned with here is the question of whether Cremeans received constitutionally adequate process when he was placed on involuntary nonduty medical disability retirement. For the reasons which follow we conclude that as a matter of law Cremeans received constitutionally adequate process and erred in the trial court submitting this case to the jury.

In this case, a large portion of the plaintiff's claim was the history of animosity

between himself and Asman. Viewing the evidence in the light most favorable to Cremeans, the prevailing party, the following incidents evidenced Asman's animosity towards Cremeans.

(1) In March of 1969 Cremeans and a Sergeant Murphy made a DUIL arrest of a Mr. Pierce. Apparently while plaintiff was preparing an arrest report Pierce was released by another officer. Thereafter, Asman, Cremeans and Murphy agreed that they would tear up Pierce's booking slip and that another officer would erase the breath test record. Cremeans' arrest report apparently got into the hands of department superiors who investigated the incident and the matter was resolved internally.

(2) In 1977 there was a trial board hearing over which Asman presided which ultimately determined that Cremeans should be discharged for shooting at a fleeing crime suspect. Cremeans was subsequently reinstated when it was determined that the charges had not been brought in a timely manner.

(3) A few weeks after Cremeans was reinstated, he was charged by Asman for leaving the police building contrary to Asman's direct order. An agreement was worked out between the City Attorney, Chief Asman, Cremeans and his attorney that if Cremeans passed an independent psychiatric evaluation, the charges by Chief Asman would be dropped. Cremeans passed the psychiatric examination and the charges were dropped.

(4) In June of 1978, the department received a death threat against Cremeans. Cremeans was ordered to leave town, was not told when to return, but was given a special telephone number to call if he had any questions. Cremeans was out of town from seven to nine days, spent a day or two at home, then returned to work. Cremeans was paid for his time but was unsuccessful in his demand for reimbursement for his lodging expenses. Plaintiff alleged that Asman dominated the Board and that the Board's action was nothing more than a sham.

In this case Asman was a member of a four person retirement board.[5] In our recent en banc decision in *Duchesne v. Williams*, 849 F.2d 1004 (6th Cir.1988), we considered whether *Loudermill* required that the pretermination hearing for a municipal employee be before a *neutral and impartial decisionmaker* rather than before the supervisor who fired him. The en banc court held that "a right of reply before the official responsible for the discharge is the entitlement contemplated in *Loudermill.*" *Duchesne*, 849 F.2d at 1005. The court focused on the limited purpose of the pretermination hearing. " 'It should be an initial check against mistaken decisions—essentially a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.' " *Id.* at 1007 (quoting *Loudermill*, 470 U.S. at 545–46, 105 S.Ct. at 1495). "The Court narrowed the essential ingredients of this pretermination hearing to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Duchesne*, 849 F.2d at 1007. The Court also looked to the municipal employer's interest, emphasizing that "[t]o require more than this *prior to termination* would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.* at 1007 (quoting *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495).

While Asman and Cremeans clearly had their differences, in light of the hearing transcript and our decision in *Duchesne*, it cannot be said that the hearing itself was nothing more than a sham such that the pretermination hearing did not fulfill its function. Plaintiff had approximately 26 hours notice that the Retirement Board was going to consider his case. When plaintiff expressed doubts as to what his legal rights were, the Board offered to

**5.** The Board normally consisted of five persons but one member was absent from the January 7, 1981 meeting.

table the matter and allow plaintiff additional time to prepare. Plaintiff did not request that the matter be tabled, but instead "dumped" the decision back into the Board's hands. Finally, Cremeans repeatedly expressed doubts as to his ability to continue working as a patrolman before the Board.

    Haggerty: Well Jack right now do you think that you could still perform and you want to remain then as a police officer.

    Cremeans: There .. there's doubts in my mind.

    Haggerty: Oh there is doubts, you're not sure yet if you want to ...

    Cremeans: .. I'll be very honest with you. The knee is bad. From what the doctors opinions I've talked and I've seen four to five specialists. *It's not gonna get any better* even with my therapy program I'm involved in and there's doubts as to my main concern is I really honestly feel like maybe I might jeopardize my own physical being more so or I might be out there and jeopardize another officer or a citizen.

    \*     \*     \*     \*     \*     \*

    Asman: Do you have anything else to say Jack?

    Cremeans: Like I stated before, Mayor Haggerty you asked me if I'm requesting this disability. It's a heck of a decision.

    Haggerty: Yeah I know. I imagine it is.

    Cremeans: I could not give Chief Asman a decision, I could not even give Officer Powell here a decision cause I really don't know. The only thing I can state and in all honesty is that I do have my doubts as to the circumstances I entail that maybe if circumstances arise I might not be able to perform my job. But more so I could do more injuries to myself or to someone else, another officer or even a citizen. This is the discussion I had with my doctor in Ann Arbor and like I stated his letter states that I should consider changing. The doctor letter I understand from Doctor Wilson I believe it

is, is like most doctors I'd leave room of doubt. There's words in there probable and *he had serious doubts.* I guess really what it is is that I don't know what I want to do. The chief took it outta my hands, I'm gonna dump it back in your hands. But if, bein' honest with ya, this is the way I feel. (Emphasis added).

    As demonstrated by the foregoing excerpt, the plaintiff clearly had notice as to why he was being considered for medical retirement, clearly knew about the medical evidence the Board was relying upon, and was given the opportunity to present his side of the story. Rather than present his side of the story, plaintiff did nothing more than express his doubts about his ability to continue and in his own phraseology, "dumped" the decision back in the Board's hands. Under these circumstances, all concerns expressed by the Court in *Loudermill* were met. The district court tried this case shortly after the Court's decision in *Loudermill* was announced and well before our decision in *Duchesne.* In light of these cases, it was error for the trial court to have submitted the section 1983 claim to the jury. Accordingly, we REVERSE and REMAND for dismissal of the action on the merits.