Herb MERRELL, Plaintiff,

v.

BAY COUNTY METROPOLITAN TRANSPORTATION AUTHORITY and Michael Stoner, Defendants.

No. 87–CV–40124–FL.

United States District Court, E.D. Michigan, S.D.

Feb. 15, 1989.

---

5. Defendant does not contest the sufficiency of   the notice provided.

Glen Lenhoff, Flint, Mich., for plaintiff.

James S. Miner, II, Bay City, Mich., for defendants.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

This case, which involves a procedural due process claim, requires the Court to determine whether a public employee can assert a property interest in his job based upon a *Toussaint* contract. *See Toussaint v. Blue Cross & Blue Shield of Michigan,*

408 Mich. 579, 292 N.W.2d 880 (1980). Because the Court finds that Plaintiff Merrell can claim a property interest in his job based on his *Toussaint* contract, the Court must also decide whether Merrell is entitled to partial summary judgment concerning liability on his procedural due process claim. Finally, the Court must consider whether Defendant Michael Stoner is entitled to qualified immunity due to the unsettled nature of *Toussaint* law as it applies to procedural due process claims.

### I. The Factual Setting

To a large extent, the facts supporting Plaintiff Herb Merrell's procedural due process claim are not in dispute. On September 9, 1985, Defendant Bay County Metropolitan Transportation Authority ("Bay Metro") hired Plaintiff Merrell. *See, e.g.,* Complaint & Answer, ¶ 8. During Merrell's tenure as a Bay Metro employee, the parties agree that Bay Metro had the necessary state nexus to support a 42 U.S. C. § 1983 action.[1] *See generally Adams v. Vandemark,* 855 F.2d 312 (6th Cir.1988). Further, neither side disputes the facts that Plaintiff Merrell did *not* have a written employment contract, yet he did receive assurances of job security sufficient to create a *Toussaint* contract. *Compare Walker v. Consumers Power Co.,* 824 F.2d 499, 503 (6th Cir.1987) (*Toussaint* contract may be based on assurance that "as long as I performed adequately ... I would not be fired.") *with* Plaintiff's Brief, Exhibit 9 (Bay Metro's Michigan Employment Security Commission statement that Merrell's "employment was expected to last indefinitely provided, however, that Mr. Merrell could do the work efficiently and effectively."). Thus, Plaintiff Merrell asserts that his tenure as a Bay Metro employee was governed by a *Toussaint* contract "just cause" limitation regarding discharge. *See*

---

1. Neither side questions Defendant Bay Metro's status as a *Monell* entity subject to liability for personnel-related actions of Defendant Stoner. *See generally Monell v. Department of Social Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Court finds that Stoner, when making personnel decisions concerning Plaintiff Merrell, was acting as an official with final

policy-making authority. *See Pembaur v. City of Cincinnati,* 475 U.S. 469, 481, 106 S.Ct. 1292, 1299, 89 L.Ed.2d 452 (1986) ("Municipal liability attaches only where the decision-maker possesses final authority to establish municipal policy with respect to the action ordered.") (footnote omitted).

*Toussaint,* 408 Mich. at 618–19, 292 N.W. 2d 880.

The parties also agree that Plaintiff Merrell, in his capacity as manager of Bay Metro's transportation-operations department, was charged with the responsibility of supervising Bay Metro's bus drivers. In December of 1985, after Plaintiff Merrell had served as a Bay Metro employee for four months, he proposed a plan to restructure "the washing, fueling, [and] parking of the buses" at Bay Metro. *See, e.g.,* Plaintiff's Brief, Exhibit 4 (page 56 of Defendant Stoner's deposition). When this plan was implemented on January 7, 1986, the results were less than impressive. Merrell attempted to fire drivers who refused to remain on their buses because they had to use the washroom facilities, the bus line blocked a gate to a Chevrolet plant causing traffic congestion, and the police eventually were called to the scene. *See, e.g.,* Defendant Bay Metro's Answer to Interrogatory 25; *see also* Plaintiff's Brief, Exhibit 4 (pages 56–62 of Defendant Stoner's deposition). Responding to complaints from bus drivers and a member of the Bay Metro supervisory board, *see* Plaintiff's Brief, Exhibit 4 (page 60 of Stoner deposition), and based upon his own personal observation of the events that occurred on January 7, 1986, Bay Metro General Manager Michael Stoner conducted a meeting with some of the Bay Metro employees to ascertain precisely what transpired during the January 7 "safety lane incident." Defendant Stoner then met with Plaintiff Merrell on January 13, 1986 for a protracted discussion of the "safety lane incident" and Plaintiff Merrell's allegedly dictatorial style of management. At the conclusion of the face-to-face meeting between Plaintiff Merrell and Defendant Stoner on January 13, 1986, Defendant Stoner apparently decided to give Merrell a second chance. *See, e.g.,* Plaintiff's Brief, Exhibit 13 (Stoner memo summarizing "safety lane incident" and subsequent meeting of January 13, 1986).

After the January 13, 1986 meeting, Plaintiff Merrell continued in his capacity as operations manager without event through January 28, 1986. On January 29, 1986, Plaintiff Merrell left his position to go on sick leave. Merrell remained on sick leave until February 28, 1986; he called Bay Metro on February 28 to inform his employer that he intended to return to his job on March 3, 1986. Later that day, Defendant Stoner discharged Merrell as of March 3, 1986 and memorialized his decision in a letter to Plaintiff Merrell. *See* Plaintiff's Brief, Exhibit 16. Both Merrell and the defendants agree, therefore, that no meeting occurred after the January 13, 1986 tête-a-tête at which Stoner offered Merrell the opportunity to atone for the "safety lane incident."

Based on the undisputed lack of a meeting between January 13, 1986 and the discharge in early March of 1986, Plaintiff Merrell has requested summary judgment on liability concerning his procedural due process claim. In Merrell's view, he received no pretermination hearing despite the clear mandate of *Cleveland Bd. of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), that public employees must be accorded certain specific pretermination process. Plaintiff Merrell's right to the process outlined in *Loudermill,* however, depends upon his possession of "a property right in continued employment." *Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491 (footnote and citations omitted); *accord Cremeans v. City of Roseville,* 861 F.2d 878, 880 (6th Cir.1988) (quoting *Loudermill* ). Thus, the Court's initial inquiry must focus on whether Merrell, a public employee in Michigan, can assert a property interest in his job based on a *Toussaint* contract. *See Matulin v. Village of Lodi,* 862 F.2d 609, 615 (6th Cir.1988).

## II. *Toussaint as a Basis for a Property Right in Public Employment*

Plaintiff Merrell's property right in his Bay Metro job hinges on the contours of a *Toussaint* implied contract for employment under Michigan law. *See Toussaint,* 408 Mich. 579, 292 N.W.2d 880. In *Toussaint,* the Michigan Supreme Court held that "[t]he right to continued employment absent cause for termination may, thus, because of stated employer policies and established procedures, be enforceable in con-

tract[.]" *Id.* at 618–19, 292 N.W.2d 880. Since the Michigan Supreme Court handed down *Toussaint,* however, it has offered few opinions illuminating the parameters of the doctrine that it approved in *Toussaint.* *Cf. Boynton v. TRW, Inc.,* 858 F.2d 1178, 1180 (6th Cir.1988) *(en banc); see also id.* at 1188 (Lively, J., concurring) ("I believe that it is essential for the Michigan Supreme Court to clarify this body of law[.]"). Because of the peculiarly hybrid nature of procedural due process claims, the Court must examine two somewhat unsettled areas of state *Toussaint* law to determine whether Plaintiff Merrell can assert a constitutionally protected interest in his job. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed. 2d 548 (1972) ("Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law[.]"); *accord Cremeans,* 861 F.2d at 880–81; *Matulin,* 862 F.2d at 615. First, the Court must consider whether a public employee can *ever* assert a right to a *Toussaint* contract. Second, the Court must evaluate the power, if any, of an employer to unilaterally alter or abrogate a *Toussaint* contract. Neither of these issues has been directly addressed by the Michigan Supreme Court, so the Court must look to Michigan Court of Appeals decisions in an effort to anticipate the Michigan Supreme Court's positions on these two pivotal questions of state law.[2] *See Bailey v. V & O Press Co., Inc.,* 770 F.2d 601, 604 (6th Cir.1985).

### A. Toussaint in the Public Sector

■ Plaintiff Merrell undoubtedly had no property interest in his Bay Metro job if he had no *Toussaint* contract. As a public sector employee, Merrell cannot simply assume the application of a *Toussaint* contract even though Bay Metro offered him unequivocal assurances of job security. In 1984, the Michigan Court of Appeals observed that "[n]o case has yet established that *Toussaint* applies to public employees." *Engquist v. Livingston County,* 139 Mich.App. 280, 284 n. 1, 361 N.W.2d 794 (1984). During the following year, another panel of the state appellate court implicitly held that a public employee can acquire the protection of a *Toussaint* implied contract. *See Rasch v. City of East Jordan,* 141 Mich.App. 336, 367 N.W.2d 856 (1985). The *Rasch* holding concerning *Toussaint*'s public sector application is only implicit, however, because the *Rasch* court merely evaluated jury instructions without acknowledging that it was breaking new ground. Indeed, the Sixth Circuit characterized the public sector role of *Toussaint* as unsettled more than a year after *Rasch.* *See Averitt v. Cloon,* 796 F.2d 195, 200 n. 2 (6th Cir.1986). Precedent, therefore, provides no clear answer to the question of *Toussaint*'s application in the public sector. *See, e.g., Matulewicz v. Governor,* 174 Mich.App. 295, 304, 435 N.W.2d 785 (1989) (conceptualizing *Toussaint* as private sector analogue to procedural due process, but failing to recognize that no property right exists absent public sector application of *Toussaint* concept).

The most logical place to examine the scope of *Toussaint,* namely the text of the opinion itself, offers the most logical explanation of *Toussaint*'s reach. The genesis of the implied contract, as the Michigan Supreme Court explicitly recognized in *Toussaint,* is the United States Supreme Court's decision in *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). *See Toussaint,* 408 Mich. at 617–18, 292 N.W.2d 880 (quoting at length from *Perry* ). In *Perry,* the United States Supreme Court clearly sanctioned the concept of a constitutionally protected interest in employment based on an implied contract. *Perry,* 408 U.S. at 601–03, 92 S.Ct. at 2699–

---

**2.** Chief Justice Burger suggested that federal courts should abstain rather than tackle such unresolved state law issues. *See Perry v. Sindermann,* 408 U.S. 593, 604, 92 S.Ct. 2694, 2717, 33 L.Ed.2d 570 (1972) (Burger, C.J., concurring). The practical result of abstention, however, is that such questions tend to remain unresolved. Thus, the Court shall consider each of the *Tous-* *saint* issues to the extent necessary to ascertain whether Plaintiff Merrell had a constitutionally protected property interest in his job. *Cf. Matulin v. Village of Lodi,* 862 F.2d 609, 615–16 (6th Cir.1988) (evaluating state law in an effort to determine whether the plaintiff had a property interest in her job).

2700. Thus, the *Perry* Court dealt precisely with a public sector employee and decided that an implied contract could support a cognizable claim to a property interest in employment. *Id.* at 603, 92 S.Ct. at 2700. By relying so heavily on *Perry*, the *Toussaint* court implicitly offered strong support for an implied contract extending to both public and private sector employees in Michigan. *Cf. Toussaint*, 408 Mich. at 617–18, 292 N.W.2d 880. Pursuant to the logic of *Perry* as adopted in *Toussaint*, the Court finds that Plaintiff Merrell can claim the protection of a *Toussaint* contract governing his public sector employment. This determination, however, does not rule out the possibility that Plaintiff Merrell no longer had a *Toussaint* contract at the time that he was formally discharged by Bay Metro. This second issue also must be addressed before the Court can recognize Plaintiff Merrell's asserted property interest.

### B.  Unilateral Alteration of a Toussaint Contract

In attacking Plaintiff Merrell's claim to a property interest in his job, the defendants argue vociferously that Bay Metro altered Merrell's terms of employment as of January 13, 1986. This, of course, presumes that a *Toussaint* contract can be unilaterally modified by an employer. Plaintiff Merrell contends that no such right of unilateral modification exists. Again, the Court must consider an unsettled question of state law. *Toussaint* itself is unclear on the question of unilateral modification. *See Toussaint*, 408 Mich. at 619, 292 N.W.2d 880. While *Toussaint* does indicate that employers are not free to capriciously modify implied contracts, *see id.*, the initial ruling on unilateral modification from the Michigan Court of Appeals gave employers substantial latitude in this respect. *See Ledl v. Quik Pik Food Stores, Inc.*, 133 Mich.App. 583, 586–88,

349 N.W.2d 529 (1984). In three opinions released after *Ledl*, however, the Michigan Court of Appeals more carefully circumscribed the employer's right to modify a *Toussaint* contract. In *Bullock v. Automobile Club of Michigan*, 146 Mich.App. 711, 720, 381 N.W.2d 793 (1985), *leave to appeal granted*, 425 Mich. 872 (1986), the Court of Appeals explained that "[i]t is not enough that the employer makes the actual change of policy known to those working pursuant to it; it *must* also make sure that they knew these policies can be changed." *Id.* at 720, 381 N.W.2d 793 (emphasis in original). That is, Bay Metro was powerless to abrogate Plaintiff Merrell's *Toussaint* contract protection on January 13, 1986 unless Bay Metro had informed Plaintiff Merrell earlier in his tenure that his *Toussaint* contract could be taken from him if he performed poorly.[3]  *Cf. Bullock*, 146 Mich.App. at 720, 381 N.W.2d 793.

The rule of *Bullock*, rather than the broad holding of *Ledl*, has become the governing standard in the Michigan Court of Appeals. In *Farrell v. Auto Club of Michigan*, 155 Mich.App. 378, 399 N.W.2d 531 (1986), the appellate court reiterated the *Bullock* standard for unilateral *Toussaint* contract modification. *Id.* at 386–87, 399 N.W.2d 531. The Michigan Court of Appeals recently cited both *Bullock* and *Farrell* in *Dumas v. Auto Club Ins. Ass'n*, 168 Mich.App. 619, 627–29, 425 N.W.2d 480 (1988), thereby solidifying the validity of *Bullock* as an accurate statement of *Toussaint* law. The *Bullock* formulation of unilateral modification is certain to serve as the proper mode of analysis absent alteration of the *Bullock* decision by the Michigan Supreme Court; a more expansive right to unilaterally alter an implied contract's terms would essentially render the contract rights illusory. Applying the *Bullock* standard to Plaintiff Merrell's

---

**3.** This is not to say that Bay Metro lacked just cause to fire Plaintiff Merrell in January of 1986. Had Bay Metro discharged the plaintiff in January based on the safety lane incident, the Court would have to focus on whether the safety lane incident provided "just cause" for discharge within the meaning of *Toussaint*.

The scope of the power to modify a *Toussaint* contract is strictly a question of law, whereas the existence of a sufficient prior warning of modification power in any given case is a fact question for the jury. *See Bullock,* 146 Mich. App. at 721, 381 N.W.2d 793. The adequacy of prior warning, however, is not at issue in this case. Rather, the defendants merely argue that Bay Metro had the power, even without prior warning, to unilaterally modify Plaintiff Merrell's contract in January of 1986.

case, the Court finds that Defendant Bay Metro had no power to unilaterally alter Merrell's implied contract because Bay Metro gave Merrell no prior notice of its reserved authority to take such action. *See Bullock*, 146 Mich.App. at 720, 381 N.W.2d 793. The upshot of this determination is simply that Plaintiff Merrell had a *Toussaint* implied contract at the time Bay Metro discharged him in March of 1986. Based on this *Toussaint* contract, the Court further finds that Plaintiff Merrell had a property interest in his job sufficient to confer a constitutionally protected right to the pretermination process outlined in *Loudermill*.[4] *See Perry*, 408 U.S. at 593, 92 S.Ct. at 2694. The remaining procedural due process issue, then, is whether Plaintiff Merrell received adequate pretermination process.

### III. Procedural Due Process in the Employment Context

■ The Supreme Court's 1985 decision in *Loudermill* enumerated three distinct procedural due process rights applicable in the employment context: (1) oral or written notice of the pending charges against the employee; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee "to present his side of the story." *Loudermill*, 470 U.S. at 546, 105 S.Ct. at 1495. The pretermination hearing to which an employee is entitled "need not be elaborate." *Id.* at 545, 105 S.Ct. at 1495. In fact, the hearing need not be anything more than "a right of reply before the official responsible for the discharge." *Duchesne v. Williams*, 849 F.2d 1004, 1005 (6th Cir.1988) (*en banc*). Nevertheless, an informal hearing with prior notice and a discussion of evidence *must* occur before discharge if a property interest is involved. *See Loudermill v. Cleve-*

*land Bd. of Education*, 844 F.2d 304, 310–11 (6th Cir.1988) (after remand from the United States Supreme Court).

In Plaintiff Merrell's case, he did have a meeting with Defendant Stoner in January of 1986 immediately after the safety lane incident. The decision reached by Stoner as a result of the January meeting, however, was that Merrell should be given a second chance. *See, e.g.,* Plaintiff's Brief, Exhibit 13 (Stoner memo summarizing "safety lane incident" and subsequent meeting of January 13, 1986). Merrell remained a Bay Metro employee for nearly two more months until he was summarily fired in March of 1986. Defendant Bay Metro provided Merrell with *none* of the *Loudermill* rights; Defendant Stoner simply wrote a discharge letter on February 28, 1986 and sent it by certified mail to Plaintiff Merrell. *See* Plaintiff's Brief, Exhibit 16 (letter of discharge). This is precisely what the Supreme Court proscribed in *Loudermill.* The propriety of the basis for discharge is immaterial in the procedural due process context. Rather, Plaintiff Merrell was entitled to nothing more and nothing less than a hearing prior to dismissal. Moreover, the January 13 meeting did not obviate the need for a pretermination hearing in March. By the defendants' own admission, Defendant Stoner explicitly informed Plaintiff Merrell that he was being given a second chance. *See* Plaintiff's Brief, Exhibit 13. This decision is borne out by Bay Metro's retention of Merrell until March of 1986. Although Bay Metro was perfectly free to discharge Merrell in March of 1986 (or at any other time) if it had proper cause for dismissal, *see Toussaint*, 408 Mich. 579, 292 N.W.2d 880, Plaintiff Merrell's property interest in his job entitled him to a brief pretermination hearing prior to such a discharge. *See, e.g., Loudermill*, 470 U.S. at 546, 105 S.Ct.

---

**4.** This conclusion is buttressed by the United States Supreme Court's comment in *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), that "[a] property interest in employment can, of course, be created ... by an implied contract." *Id.* at 344, 96 S.Ct. at 2077 (citing *Perry*). Under current Michigan *Toussaint* law, the Court can determine as a matter of law that a public sector *Toussaint* contract creates a property interest in employment. *Cf.*

*Easley v. University of Michigan Bd. of Regents*, 853 F.2d 1351, 1355 n. 3 (6th Cir.1988) (establishment of a property interest is a question of law). Because state law defines the nature and applicability of an implied contract, however, alteration of the *Toussaint* concept by Michigan courts or the state legislature could render such an implied contract's protection too ephemeral to support a constitutionally protected property interest in employment.

at 1495. In March of 1986, Plaintiff Merrell was fired without any form of hearing. For this reason, he is entitled to summary judgment on liability on his procedural due process claim.[5]

### IV. Qualified Immunity

 While summary judgment on liability is appropriate against Bay Metro, Defendant Stoner has asserted a claim of qualified immunity not available to Bay Metro. *See generally Poe v. Haydon,* 853 F.2d 418, 423–24 (6th Cir.1988). As the Sixth Circuit explained in *Poe,* "[g]overnment officials performing discretionary functions are afforded qualified immunity, shielding them from civil damages, as long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 423 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In this case, the unsettled nature of *Toussaint* as applied in the procedural due process context makes qualified immunity appropriate. Even the Michigan Court of Appeals is not entirely clear on two of the crucial *Toussaint* questions that form the foundation for Plaintiff Merrell's property interest. Defendant Stoner, therefore, could not be expected to appreciate the importance of affording Merrell a pretermination hearing before firing him. Under the circumstances, the Court finds as a matter of law that Defendant Stoner is entitled to qualified immunity concerning the procedural due process claim. Further, the Court finds

that summary judgment on the procedural due process claim in Defendant Stoner's favor is warranted even though Stoner has not requested summary judgment. *See Dickeson v. Quarberg,* 844 F.2d 1435, 1444 n. 8 (10th Cir.1988) (" '[T]he weight of authority is that summary judgment may be rendered in favor of the opposing party even though he has made no formal cross-motion under Rule 56.' ") (citation omitted). Summary judgment on qualified immunity grounds at this juncture is entirely consistent with the very purpose of the qualified immunity concept. *See Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985) ("The entitlement [of qualified immunity] is an *immunity from suit* rather than a mere defense to liability[.]") (emphasis in original).

### V. Conclusion

Based on the Court's determination that Plaintiff Merrell's *Toussaint* contract created a property interest in his job, Merrell was entitled to *Loudermill* process prior to discharge. Bay Metro's failure to provide such process makes summary judgment on liability against Bay Metro appropriate. Because Defendant Stoner can assert a right to qualified immunity, however, summary judgment in favor of Stoner on the procedural due process claim will be granted. The Court shall enter such an order.

---

**5.** Query whether this victory is somewhat hollow if Defendant Bay Metro prevails on Plaintiff Merrell's breach of *Toussaint* contract claim by convincing the jury that it had just cause to dismiss Merrell. A panel of the Eighth Circuit debated the extent of available damages for a procedural due process violation in *Hogue v. Clinton,* 791 F.2d 1318 (8th Cir.1986). The *Hogue* majority made the following comments:

> Proof of a violation of his right to procedural due process will entitle [the plaintiff] to at least nominal damages and attorney fees under the "Lawyer's Relief Act." Actual damages such as back pay, however, will be awarded only if [plaintiff] can prove actual injury. Unless [plaintiff] can establish that he suffered actual injury due to the failure to hold a pretermination name clearing hearing, we think an award of anything but nominal

damages would be a windfall, not compensation.

*Id.* at 1323 (citations omitted). In dissent, Chief Judge Lay disputed the majority's conclusion concerning the limits on damages absent actual injury. *See id.* at 1326–29 (Lay, C.J., dissenting in part). In Chief Judge Lay's view, "an employee who proves a property deprivation based on having been terminated without a *Loudermill* pretermination hearing [should] be awarded back pay from the time of discharge until a proper hearing is held." *Id.* at 1329 (Lay, C.J., dissenting in part). This position clearly was considered and rejected by the *Hogue* majority. *Id.* at 1325. The *Hogue* majority apparently did not find the distinction between liberty and property interests to be material to the issue of available damages.